UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GO GLOBAL RETAIL LLC,<br><br>              Plaintiff,<br><br>v.<br><br>DREAM ON ME, INC.,<br><br>              Defendant. | Case No. 1:23-cv-07987-AS<br><br>**CIVIL ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FILED BY DEFENDANT, DREAM ON ME INDUSTRIES, INC. (i/p/a DREAM ON ME, INC.)**

GREENBAUM, ROWE, SMITH & DAVIS LLP
75 Livingston Avenue
Suite 301
Roseland, New Jersey 07068
(973) 535-1600
Attorneys for Defendant, Dream On Me Industries, Inc.

On the Brief:
Jessica M. Carroll, Esq.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

LEGAL ARGUMENT .................................................................................................................6

    POINT I ...........................................................................................................................6

    PLAINTIFF'S COMPLAINT IS BARRED BY THE JULY 11, 2023
    ORDER OF THE BANKRUPTCY COURT APPROVING THE SALE
    OF THE BBBY ASSETS TO DOM. ..............................................................................6

    POINT II ........................................................................................................................12

    PLAINTIFF'S COMPLAINT DOES NOT AND CANNOT CREDIBLY
    ALLEGE THAT ANY ACTION OF DOM CAUSED IT ANY
    DAMAGES, AS GO GLOBAL DID NOT BID AT THE 363 SALE AND
    THE ASSETS WOULD HAVE GONE TO THE SECOND HIGHEST
    BIDDER IF DOM DID NOT BID. ................................................................................12

CONCLUSION ...........................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Allen v. McCurry*,
   449 U.S. 90 (1980) .................................................................................................................. 7

*Ashcroft v. Iqbal*,
   556 U.S. 622 (2009) ................................................................................................................ 6

*Baker v. Simpson*,
   613 F.3d 346 (2d Cir. 2010) .................................................................................................... 8

*In re Bed Bath & Beyond, Inc., et al*,
   Case No. 23-cv-13359-VFP (Bankr. D.N.J. July 11, 2023) ................................................ 2, 3

*Brown Media Corp. v. K&L Gates, LLP*,
   854 F.3d 150 (2d Cir. 2017) ............................................................................................. 8, 12

*Candlewood Partners LLC v. Hedstrom Corp.*,
   No. 04 B 38543, 2008 WL 4542966 (N.D. Ill. Apr. 22, 2008) ............................. 9, 10, 11, 12

*Chase Manhattan Bank, N.A. v. Celotex Corp.*,
   56 F.3d 343 (2d Cir. 1995) ...................................................................................................... 7

*In re Colony Hill Assocs.*,
   111 F.3d 269 (2d Cir. 1997) .................................................................................................... 9

*Connolly v. Hanes*,
   763 F.Supp. 6 (S.D.N.Y. 1991) ............................................................................................... 6

*DiFolco v. MSNBC Cable LLC*,
   622 F.3d 104 (2d Cir. 2010) .................................................................................................... 7

*DW Last Call Onhore, LLC v. Fun Eats and Drinks LLC*,
   2018 WL 1470591 (S.D.N.Y. Mar. 23, 2018) ......................................................................... 6

*Est. of Lennon by Lennon v. Screen Creations, Ltd.*,
   939 F. Supp. 287 (S.D.N.Y. 1996) .......................................................................................... 7

*Federated Dep't Stores, Inc. v. Moitie*,
   452 U.S. 394 (1981) ................................................................................................................ 7

*Green v. Santa Fe Indus., Inc.*,
   514 N.E.2d 105 (1987) ........................................................................................................ 7, 8

*In re Gucci*,
    126 F.3d 380 (2d Cir. 1997) .................................................................................................9

*Henschke v. New York Hosp.-Cornell Med. Ctr.*,
    821 F. Supp. 166 (S.D.N.Y. 1993) .......................................................................................7

*Hill v. Sullivan*,
    125 F.R.D. 86 (S.D.N.Y.1989) .............................................................................................6

*In re Layo*,
    460 F.3d 289 (2d Cir. 2006) .................................................................................................8

*NLRB v. United Techs. Corp.*,
    706 F.2d 1254 (2d Cir. 1983) ...............................................................................................8

*Papasan v. Allain*,
    478 U.S. 265 (1986) .............................................................................................................6

*Parnes v. Mast Prop. Invs., Inc.*,
    776 F. Supp. 792 (S.D.N.Y. 1991) .......................................................................................6

*In re Reinert*,
    597 Fed. Appx. 139 (3d Cir. 2015) ................................................................................10, 12

*Sure-Snap Corp. v. State St. Bank and Tr. Co.*,
    948 F.2d 869 (2d Cir. 1991) .................................................................................................8

*Tagare v. NYNEX Network Sys. Co.*,
    921 F. Supp. 1146 (S.D.N.Y. 1996) .....................................................................................7

*Todaro v. Orbit Int'l Travel, Ltd.*,
    755 F. Supp. 1229 (S.D.N.Y. 1991) .....................................................................................6

*In re Waypoint Leasing Holdings Ltd.*,
    607 B.R. 143 (Bankr. S.D.N.Y. 2019) ...........................................................................12, 13

**Rules**

Bankruptcy Rule 7052 ....................................................................................................................4

Federal Rule of Civil Procedure 12(b)(6) ......................................................................................6

**Statutes**

28 U.S.C. § 158(a) ....................................................................................................................5, 10

## **PRELIMINARY STATEMENT**

Defendant, Dream on Me Industries, Inc., wrongfully identified in the Complaint as Dream on Me, Inc. ("DOM") hereby moves to dismiss the Complaint filed by Plaintiff, Go Global, LLC ("Plaintiff") on two grounds: (1) the claims in the Complaint are barred by a prior order of a bankruptcy court, and (2) Plaintiff cannot allege that any action of DOM caused it any damages.

Plaintiff's Complaint alleges that DOM breached a Non-Disclosure Agreement ("NDA") by improperly using confidential and proprietary information obtained from Plaintiff to successfully bid on the intellectual property assets of Buy Buy Baby ("BBBY") during a Section 363 sale after Bed Bath & Beyond, Inc. ("BB&B" or "Debtor") filed for Chapter 11 bankruptcy.

However, a July 11, 2023, Order entered by the Bankruptcy Court approving the sale of the Debtor's BBBY assets to DOM ("Sale Order") expressly precludes, enjoins and prohibits any and all claims against DOM with respect to its acquisition of these assets through the Section 363 sale. The Sale Order provides in pertinent part that "all persons and entities . . . _are hereby . . . forever barred, estopped and permanently enjoyed from asserting such claims against any Purchaser Party [defined as DOM] or its property (including the Acquired Assets)._" (emphasis added).

Plaintiff's failure to object during the bankruptcy proceeding, or to appeal the Sale Order, is fatal. The Sale Order precludes Plaintiff's claims because they are a collateral attack on the reliability and sanctity of the Section 363 sale. Despite premising the claims as a breach of the NDA, the claims in the Complaint constitute an impermissible and untimely appeal of, or collateral attack on, the bankruptcy proceeding. The crux of the allegations in the Complaint are that there was collusion and bad faith during the bankruptcy process—facts that the bankruptcy court expressly found did not exist. As a matter of bankruptcy procedure, the bankruptcy court thoroughly vetted all bidders and DOM was the successful bidder in a fair and court-approved

process. The bankruptcy court found that DOM acted in good faith through the sale process, and the bankruptcy court's order and findings bars the claims in Plaintiff's Complaint.

Moreover, the Complaint fails to allege that Plaintiff even made a bid during the bankruptcy sale. Significantly, the Complaint is devoid of any allegations indicating that Plaintiff actively participated in the sale process or that it would have been the successful bidder but for DOM's bid and alleged breach of the NDA. In fact, Plaintiff did not bid, and there were other bids for the BBBY assets, which would have gone to the second highest bidder if DOM had not bid. *In re Bed Bath & Beyond, Inc., et al*, Case No. 23-cv-13359-VFP (Bankr. D.N.J. July 11, 2023). Because Plaintiff did not bid, and because the second highest bidder would have received the BBBY assets, Plaintiff cannot establish causation, and all of its claims must be dismissed. Accordingly, the Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

This matter arises out of an NDA entered into between Plaintiff and DOM that Plaintiff alleges expressly forbid DOM from bidding on BBBY's assets during a Section 363 sale after BB&B filed for Chapter 11 bankruptcy. The allegations in the Complaint reflect that BBBY is a subsidiary of BB&B. On April 23, 2023, BB&B filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court"). The Bankruptcy Court entered an Order on July 11, 2023, approving the sale of the acquired assets of BB&B, and its subsidiaries, free and clear of all liens, claims, and encumbrances (the "Bankruptcy Order" or "Sale Order"). It also approved bidding procedures for the sale of both BB&B and BBBY. More specifically, the Bankruptcy Court ordered an auction for BBBY's intellectual property assets to be held on June 28, 2023, and an auction for the remaining assets of BBBY to be held on June 29, 2023. Complaint, ECF No. 5, attached as Exhibit A to the Declaration of Jessica M. Carroll, Esq. submitted in support of this motion.

Plaintiff's Complaint alleges that it entered into the NDA with DOM to explore ways to form a partnership for purposes of submitting a stalking horse bid for the assets of BBBY jointly. Ultimately, DOM independently submitted a successful bid for BBBY's intellectual property assets. Significantly, Plaintiff does not allege that it submitted a bid or that it objected to or appealed the Bankruptcy Order after DOM submitted its bid (i.e., the alleged breach). Nor can Plaintiff allege any damages resulting from DOM's bid, as there were other bidders at the sale, which would have acquired the BBBY assets had DOM not bid at all. Id.

The Complaint refers to the July 11, 2023, court hearing whereby the Bankruptcy Court approved the sale of BBBY's intellectual property to DOM. *Id.* at ¶ 96. Consequently, the Bankruptcy Order is incorporated in the Complaint by reference. *See* Order Approving Sale, *In re Bed Bath & Beyond, Inc., et al*, Case No. 23-cv-13359-VFP (Bankr. D.N.J. July 11, 2023), ECF No. 1314 (hereinafter referred to as "Sale Order" or Bankruptcy Order"), also attached as Exhibit B to the Declaration of Jessica M. Carroll, Esq. submitted in support of this motion. The Bankruptcy Order authorized BB&B to enter into an asset purchase agreement ("APA") dated as of June 30, 2023. It defined the Purchaser as: Mark Srour-Serure, Dream On Me Industries, Inc., Dream 545 Weston Canal Road, LLC (collectively referred to as the "Purchaser")[1], and other signatory that "extend to and include (a) any designee of such Purchaser…" *Id*. at Fn 2.

Notably, the Bankruptcy Court's findings and conclusions protect DOM from subsequent litigations arising out of and relating to the APA and the bankruptcy proceeding. The "General Provisions" under Section I of the Bankruptcy Order, provides, in relevant part, that: (1) the findings and conclusions set forth therein constitute the Court's findings of fact and conclusions

---

[1] The Complaint in this matter improperly identifies Dream On Me, Inc. as the Defendant. As noted, the actual purchaser of BBBY's assets was Dream On Me Industries, Inc.

of law pursuant to Bankruptcy Rule 7052; (2) that those parties who did not object or withdrew their objections to the motion are deemed to have consented pursuant to section 363(f)(2); and (3) that notice of the motion and sale hearing was adequate, appropriate, fair and equitable under the circumstances, and complied in all respects with the Bankruptcy Code, the Bankruptcy Rules, and the Bidding Procedures.  *Id.* at § I, ¶¶ 1-4.

Section II of the Bankruptcy Order, in turn, approved the APA and directed the parties to take any and all action necessary or desirable to implement the transaction.  Additionally, Section II rendered the Sale Order, along with the terms and provisions of the APA, binding upon any holders of claims, encumbrances, and interests in, against, or on all or any portion of the acquired assets.  *Id.* at § II, ¶¶ 5-8.  Most significantly, the "Good Faith of the Purchaser" provision under Section III of the Bankruptcy Order details the Bankruptcy Court's findings that DOM operated in good faith throughout the sale process. *Id.* at § III ¶¶ H-I.  Specifically, the Bankruptcy Order provides that "[n]either the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the APA or the Transaction to be avoided…"  Indeed, "[t]he Purchaser has proceeded in good faith in all respects in connection with the Transaction." *Id.* Likewise, Paragraph 23 in Section IV found that the APA was entered into without collusion *Id.* at § IV ¶ 23.

Section IV of the Bankruptcy Court's holdings enumerate prohibitions of actions against DOM.  Specifically, Paragraph 16 provides:

> 16.     All persons and entities that are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed to or by the Purchase pursuant to the APA are hereby directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date. Subject to terms, conditions, and provisions of this Sale Order, **all persons and entities** including, without limitation, the Debtors, creditors, employees, former employees, shareholder, administrative agencies, tax and regulatory authorities, governmental departments, secretaries of state, federal, state and local officials, litigation claimants, and their respective successors and assigns, are hereby forever prohibited and enjoined from taking any action that would adversely affect or

interfere with the ability of the Debtors to sell and/or transfer the Acquired Assets to the Purchaser (or its designee) in accordance with the terms of the APA and this Sale Order and **are hereby forever barred, estopped and permanently enjoined from asserting such claims against any Purchaser Party or its property (including the Acquired Assets)**.

*Id.* at § IV ⁋ 16. (emphasis added).  Additionally, Paragraph 22 provides:

> 22.     Effective upon the Closing, **all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding, against any Purchaser Party** or their respective assets (including, without limitation, the Acquired Assets), with respect to any claim in the chapter 11 cases or in connection with or related to the Transaction, the Debtors, or the Acquired Assets.

*Id.* at § IV ⁋ 22.

Furthermore, the provisions memorialize that the Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a) and that the Bankruptcy Court found that the Federal Rules of Civil Procedure "expressly directs entry of judgment as set forth" within the Bankruptcy Order. *Id.* at § I, ⁋ C and § IV, ⁋ 24.

Plaintiff filed the four-count Complaint in this action on September 14, 2023, based on diversity of citizenship and the amount in controversy exceeding $75,000.  Venue is laid pursuant to a forum selection clause in the NDA subjecting the parties to federal or state court in New York County.  See Exhibit A, ECF No. 5 at ⁋⁋ 17-19.

Plaintiff's allegations challenge the adequacy and reliability of the Bankruptcy Order as the final entry of judgment it ordered.  The First Cause of Action alleges that DOM's bid on BBBY's intellectual property (which was approved by the Bankruptcy Court on July 11, 2023) breached the parties' NDA because DOM failed to provide Plaintiff with written notice in advance of bidding.  *Id.* at ⁋⁋ 105-113.  The Second Cause of Action seeks attorneys' fees and costs pursuant to the NDA.  *Id.* at ⁋⁋ 114-118. The Third Cause of Action alleges unjust enrichment because

DOM formulated its bid by allegedly using Plaintiff's proprietary information that it accessed because of the NDA; the Fourth Cause of Action seeks a constructive trust over BBBY's assets that DOM acquired, along with the revenues and profits it earned, in connection with the sale approved by the Bankruptcy Court. *Id.* at ¶¶ 119-134. All of Plaintiff's claims should be dismissed.

## LEGAL ARGUMENT

### POINT IPOINT ONE

**PLAINTIFF'S COMPLAINT IS BARRED BY THE JULY 11, 2023 ORDER OF THE BANKRUPTCY COURT APPROVING THE SALE OF THE BBBY ASSETS TO DOM.**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint. *DW Last Call Onhore, LLC v. Fun Eats and Drinks LLC*, 2018 WL 1470591, at *3 (S.D.N.Y. Mar. 23, 2018). Pursuant to *Rule* 12(b)(6), a district court may dismiss the complaint if it does not contain sufficient factual matter to state a plausible claim on its face. *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Parnes v. Mast Prop. Invs., Inc.*, 776 F. Supp. 792, 795 (S.D.N.Y. 1991) (quoting *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir. 1985)) (dismissal under Rule 12(b)(6) only if "it appears 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"). A district court will read the allegations generously, accepting "plaintiff's allegations of fact as true[,]" while drawing all reasonable inferences "in favor of the party opposing the motion[,]" *Parnes*, 776 F. Supp. at 795; *Papasan v. Allain,* 478 U.S. 265, 283 (1986); *Connolly v. Hanes*, 763 F.Supp. 6, 9 (S.D.N.Y. 1991); *Hill v. Sullivan,* 125 F.R.D. 86, 90 (S.D.N.Y.1989) ("all allegations in plaintiffs' amended complaint must be accepted as true and liberally construed."); *Todaro v. Orbit Int'l Travel, Ltd.*, 755 F. Supp. 1229, 1233 (S.D.N.Y. 1991) (in deciding motion to dismiss, court must limit analysis to four corners of

complaint and accept "plaintiff's allegations as true, together with such reasonable inferences as may be drawn in his favor.").

While the district courts "are not permitted to consider factual matters submitted outside of the Complaint[,]" it is within the district court's discretion whether to exclude any additional submissions or to convert the motion into one for summary judgment. *Tagare v. NYNEX Network Sys. Co.*, 921 F. Supp. 1146, 1149 (S.D.N.Y. 1996); *Henschke v. New York Hosp.-Cornell Med. Ctr.*, 821 F. Supp. 166, 168 (S.D.N.Y. 1993); *Est. of Lennon by Lennon v. Screen Creations, Ltd.*, 939 F. Supp. 287, 292 (S.D.N.Y. 1996) (motion will remain as one for dismissal rather than summary judgment "where affidavits [are] scanty and inconclusive and would not assist court in resolving motion as one for summary judgment."). However, a court may consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint[,]" along with documents the complaint relies on for its terms to effectively render the document so integral to the complaint that there is no dispute as to its authenticity and accuracy. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

Allowing Plaintiff to belatedly assert claims against DOM operates as an impermissible collateral attack on the Sale Order and the claims in the Complaint are barred under principles of *res judicata* in the bankruptcy setting. The doctrine of *res judicata* precludes parties, or those in privity, from relitigating issues that were or could have been raised in a prior action where a final judgment on the merits was entered. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Allen v. McCurry*, 449 U.S. 90, 94 (1980). To establish privity, there must be a connection between the parties "such that the interests of the nonparty can be said to have been represented in the prior proceeding." *Green v. Santa Fe Indus., Inc.*, 514 N.E.2d 105, 108 (1987); *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 347 (2d Cir. 1995) (federal doctrine

uses privity in similar way to use under New York law). When determining whether *res judicata* will bar a subsequent action, a court considers if "(1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same." *In re Layo*, 460 F.3d 289, 292 (2d Cir. 2006) (quoting *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 87–88 (2d Cir. 1997)). Additionally, the preclusive effect will depend on "whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983)).

In the context of whether *res judicata* applies to an order stemming from a bankruptcy proceeding, the Second Circuit identifies the critical question as "whether an independent judgment in a separate proceeding would impair or destroy rights or interests established by the judgment entered in the first action." *Id*. at 162. *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 162 (2d Cir. 2017) (recognizing that *res judicata* "can be an awkward fit when applied to bankruptcy proceedings" because it is fundamentally different from a civil action)(citations omitted). A bankruptcy court has jurisdiction to consider issues affecting the adjudication of claims that were "an essential part of administering the estate" and "implicate the integrity of the entire bankruptcy process." *Id.* at 160; *see generally Baker v. Simpson*, 613 F.3d 346, 350 (2d Cir. 2010). As such, the Second Circuit has held that a subsequent action is barred by *res judicata* where a plaintiff fails to raise those issues during the bankruptcy proceeding if they could have impaired or destroyed the rights or interests established by the bankruptcy order or would have caused the bankruptcy court to structure a different disposition. *Id.* at 162; *Sure-Snap Corp. v. State St. Bank and Tr. Co.*, 948 F.2d 869, 876 (2d Cir. 1991).

Notably, an unsuccessful or "disqualified" bidder has standing to object in a bankruptcy proceeding when the allegations could destroy the "intrinsic fairness" of the bankruptcy sale by demonstrating there was not a good faith purchaser. *See e.g., In re Colony Hill Assocs.*, 111 F.3d 269, 274 (2d Cir. 1997). "Intrinsic fairness" and findings of a good faith purchaser evaluates "the integrity of [the purchaser's] conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made." *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997). "A purchaser's good faith is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Id.* (citations omitted). Here, Plaintiff had standing to raise, and failed to raise, its grievances with the Bankruptcy Court. The Bankruptcy Court provided a forum for Plaintiff, along with multiple parties, to sort out and allocate BBBY's assets to maximize the value of those assets. Had Plaintiff expressed its concerns, and if successful, the challenge could have vacated the sale.

In *Candlewood Partners LLC v. Hedstrom Corp.*, No. 04 B 38543, 2008 WL 4542966, at *1 (N.D. Ill. Apr. 22, 2008)[2], the Northen District Court of Illinois found that a claimant had standing to object to the sale despite the claimant having not made a bid. Furthermore, the claimant there was found to have standing to object during the bankruptcy proceeding despite not having appeared on a list of potential buyers. *Id.* at *2 (affirming bankruptcy court's decision to overrule claimant's objection because claimant had standing to appeal based on the nature of objection during the bankruptcy proceeding). Lastly, in evaluating the claimant's "ulterior motives" and failure to object to the sale, the District Court highlighted the effects of *res judicata* in a state

---

[2] Counsel has not found a District Court case in New York which has analyzed *res judicata* and its preclusive effect in an action following a bankruptcy proceeding where the plaintiff alleges improper behavior on behalf of the successful bidder based on a breach of contract and use of proprietary information.

lawsuit against the successful bidder because of the need to prevent related actions following the finding of good faith in a bankruptcy proceeding. *Id*. at *3.  The District Court reasoned that parties cannot take subsequent positions that could undo the finality of the bankruptcy proceeding, especially when the claimant fails to object or appeal to the sale at the time of the bankruptcy, once a bankruptcy sale becomes final. *See In re Reinert*, 597 Fed. Appx. 139, 141 (3d Cir. 2015) (holding that debtor who never objected to sale or appealed could not take contrary position as to ownership of assets in later state-court action).

Here, Plaintiff's Complaint is barred by *res judicata* because the Bankruptcy Court entered a final judgment on the merits, the Bankruptcy Court had competent jurisdiction, and Plaintiff could have asserted these claims during the bankruptcy proceeding. The Sale Order explicitly states that it constitutes a final order within the meaning of 28 U.S.C. § 158(a) and that the Bankruptcy Court expressly found that there was no just reason for delay in the implementation of the Sale Order.  On July 11, 2023, the Bankruptcy Court approved the sale of BB&B's assets, along with BBBY's assets to DOM.  It also set forth and approved bidding procedures by ordering an auction of BBBY's intellectual property.  The Bankruptcy Order authorized BB&B to enter into an APA with DOM on June 30, 2023.  Exhibit B, ECF Doc. No.1314.

The Bankruptcy Court built in protections by explicitly prohibiting subsequent actions such as this one.  Specifically, Paragraph 16 provides:

> 16. All persons and entities that are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed to or by the Purchase pursuant to the APA are hereby directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date. Subject to terms, conditions, and provisions of this Sale Order, **all persons and entities** including, without limitation, the Debtors, creditors, employees, former employees, shareholder, administrative agencies, tax and regulatory authorities, governmental departments, secretaries of state, federal, state and local officials, litigation claimants, and their respective successors and assigns, are hereby forever prohibited and enjoined from taking any action that would adversely affect or

interfere with the ability of the Debtors to sell and/or transfer the Acquired Assets to the Purchaser (or its designee) in accordance with the terms of the APA and this Sale Order and **are hereby forever barred, estopped and permanently enjoined from asserting such claims against any Purchaser Party or its property (including the Acquired Assets)**.

*Id.* at § IV ⁋ 16. (emphasis added). Additionally, Paragraph 22 provides:

> 22.    Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding, against any Purchaser Party or their respective assets (including, without limitation, the Acquired Assets), with respect to any claim in the chapter 11 cases or in connection with or related to the Transaction, the Debtors, or the Acquired Assets.

*Id.* at § IV ⁋ 22. Read together, Paragraphs 16 and 22 forever bar, estop, and permanently enjoin Plaintiff from commencing or continuing any action in any judicial proceeding against DOM, whether in law or in equity, including the claims asserted herein.

Consequently, Plaintiff's entire Complaint fails to assert any claims upon which relief can be granted. Count One for breach of contract must be dismissed because it is premised on an alleged breach of the NDA that was entered into in anticipation of submitting a bid at the Section 363 sale, and the damages sought are a result of DOM purchasing the BBBY assets at the Section 363 sale. Similarly, Count Two seeking attorneys' fees, which is premised on the NDA and breach of contract claim, equally fails. Additionally, Counts Three and Four should be dismissed because unjust enrichment is an equitable claim and a constructive trust is an equitable remedy—both of which claims are barred by Paragraph 22. *Id.*

Plaintiff failed to raise any issues that could (and should) have been raised during the bankruptcy proceeding, which it clearly was aware of based upon the allegations in the Complaint. Similar to the plaintiff in *Candlewood Partners,* Plaintiff had standing to object despite not having made a bid or appearing on the list of potential buyers. Indeed, these rights were protected by

Paragraph E or the Sale Order. *Id.* at §II, ¶ E ("reasonable opportunity to object and be heard with respect to the Transaction, the Motion and the relief requested therein and provided in this Sale Order has been afforded to all interested persons and entities…"); *Candlewood Partners*, 2008 WL 4542966, at *2. Likewise, Plaintiff's "ulterior motives" for bringing this lawsuit cannot be overlooked given the need to separate related actions following the finding of good faith in a bankruptcy sale proceeding. *Id.* at *3; *In re Reinert*, 597 Fed. Appx. at 141. The Bankruptcy Court found that DOM operated in good faith while negotiating, proposing and entering into the APA and that the APA was entered without collusion. Exhibit B, ECF Doc. No.1314, § III ¶¶ H-I.

As a matter of public policy, allowing Plaintiff's case to continue would circumvent and undermine the validity of the Sale Order (and by extension, all other sale orders entered by bankruptcy courts). By untimely asserting claims that purportedly expose an unjust circumvention by DOM during the sale process affects the rights and interests established in the Bankruptcy Order because if timely asserted, they would have caused the Bankruptcy Court to structure a different disposition. *Brown Media Corp*, 854 F.3d at 162.  In other words, if Plaintiff's allegations were true, then the sale would be void and the bankruptcy decision vacated.

Accordingly, the Complaint should be dismissed because the claims it asserts are barred by the Sale Order.

**POINT IIPOINT TWO**

**PLAINTIFF'S COMPLAINT DOES NOT AND CANNOT CREDIBLY ALLEGE THAT ANY ACTION OF DOM CAUSED IT ANY DAMAGES, AS GO GLOBAL DID NOT BID AT THE 363 SALE AND THE ASSETS WOULD HAVE GONE TO THE SECOND HIGHEST BIDDER IF DOM DID NOT BID.**

Plaintiff has not plead how DOM's alleged breach of the NDA caused it any damages and the Complaint is entirely lacking in any allegations of causation. In. *In re Waypoint Leasing*, the

Bankruptcy Court for the Southern District of New York found that a disappointed stalking horse bidder, acting as debtor's assignee, did not allege breach of a "no contact" provision of an NDA that precluded the defendant from contacting certain designated persons. There, the Bankruptcy Court dismissed the action because the complaint failed to allege how those "contacts" caused any damage to the debtor. *In re Waypoint Leasing Holdings Ltd.*, 607 B.R. 143, 154 (Bankr. S.D.N.Y. 2019). The Bankruptcy Court reasoned that, even assuming the alleged breach to be true, the allegations only speculated that those "contacts" deprived the debtor of receiving potential competing bids for the assets and the additional value that those bids may have realized. *Id*. Similarly, the allegations failed to allege that plaintiff's bid was higher—as that would be a critical piece of information in determining whether the debtor was damaged. *Id*. Equally implausible was that a third party would have made an offer higher and better than the successful bidder when an alternative bid would have triggered a break-up fee and the overall amount needed for the alternative bid to qualify as "higher and better" would have exceeded "the bounds of wishful thinking." *Id*.

Here, Plaintiff fails to set forth any facts showing how DOM's bid caused Plaintiff any damage. First, Plaintiff's Complaint does not allege that Plaintiff submitted a bid at the auction – a critical fact in determining whether DOM caused Plaintiff any damages. Second, the Complaint contains no allegations as to the value for the actual amount Plaintiff allegedly intended to bid for BBBY's intellectual property assets. Instead, the Complaint refers to an unsubstantiated, and nondelineated, potential collective bid of $60 million for both BBBY's intellectual assets and BBBY's Going-Concern auction, a bid which Plaintiff never made. Third, the Complaint does not allege that there were no other bidders, or inform the Court that the second highest bid would have been successful if DOM did not bid in alleged compliance with the NDA. Because Plaintiff does

not allege that it submitted a bid, and because the BBBY assets would have gone to the next highest bidder if DOM did not submit a bid, Plaintiff cannot plausibly allege any damages flowing from DOM's alleged breach of the NDA, or other conduct related to its bid, which support's Plaintiff's claims. Concisely stated, Plaintiff's Complaint is fatally deficient because Plaintiff cannot show that but for DOM's bid (i.e., the alleged breach), Plaintiff would have obtained BBBY's assets over every other bidder. As Plaintiff's have not alleged any causation with respect to damages for any of its claims, the Complaint should be dismissed in its entirety.

## CONCLUSION

For the foregoing reasons, DOM respectfully requests that the Court grants its motion to dismiss because: (a) the claims in Plaintiff's Complaint are barred by the Sale Order, and (2) Plaintiff does not allege, and can never prove, that DOM caused it any damages because Plaintiff did not bid at the 363 sale and the BBBY assets would have gone to the second highest bidder if DOM was not successful.

**GREENBAUM, ROWE, SMITH &DAVIS LLP**
Attorneys for Defendant,
Dream On Me Industries, Inc.

By: /s/ Jessica M. Carroll
Jessica M. Carroll, Esq.

Gary E. Fox, Esq.
FOX & MELOFCHIK, LLC
Co-counsel for Defendant,
Dream On Me Industries, Inc.

Dated: November 21, 2023