UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GO GLOBAL RETAIL LLC,

                Plaintiff,

v.

DREAM ON ME, INC.

                Defendant,

**COMPLAINT**

Case No.:

# NATURE OF THE CASE

1. Go Global Retail LLC ("Go Global") provides a cutting edge, industry leading brand investment platform built upon decades of industry experience, transactional expertise, and operational knowledge.

2. Using its proprietary systems and models, Go Global has a proven track record demonstrating its ability to identify opportunities to build brand equity in the consumer products and retail sectors.

3. In recent years, Go Global has successfully acquired distressed brands through bankruptcy and other carve-out transactions, including Modcloth, Janie + Jack, and Brums Milano.

4. In each instance, Go Global used its proprietary financial models, expertise, and industry know-how to improve operational efficiencies, develop brand recognition in key marketplaces, improve infrastructure/systems and enhance profitability.

5. Most recently, Go Global endeavored to raise debt or equity financing for the purpose of acquiring "buybuy BABY" ("BBBY") out of bankruptcy.

1

6. In connection with its efforts to prepare a stalking horse bid for the assets of BBBY, Go Global retained Ankura Capital Advisors LLC ("Ankura") to assist and advise with, among other things, identifying potential equity investors and sources of debt financing.

7. On or about June 10, 2023 Go Global and Ankura engaged in discussions with Dream on Me LLC ("DOM") about a joint bid for the assets of BBBY.

8. In connection with the potential transaction, DOM entered into a non-disclosure agreement (the "NDA") which included, among other material terms, confidentiality and non-circumvention language.

9. The NDA expressly forbid DOM from bidding on the assets of BBBY without the participation of Go Global (unless agreed in writing by Go Global).

10. After DOM signed the NDA, DOM was provided access to a data room containing Go Global's proprietary forecasts, financial models, data and other analysis concerning the details of a contemplated stalking horse bid for certain assets of BBBY.

11. In furtherance of the parties' contemplated joint bid, and subject to the terms of the NDA, Go Global disclosed additional information to DOM about strategic considerations for the operation of BBBY should a joint bid prove successful.

12. However, just days after receiving this valuable confidential information from Go Global, DOM breached the NDA by making a separate bid for the intellectual property of BBBY.

**THE PARTIES**

13. Go Global Retail LLC is a Delaware limited liability company.

14. The sole member of Go Global Retail LLC is Jeffrey Streader, a resident of the State of California.

15. Dream on Me, Inc. is a New Jersey corporation headquartered in Piscataway, New Jersey with its principal place of business located at 1532 S. Washington Avenue, Piscataway, New Jersey 08854.

16. DOM is a designer, manufacturer, and supplier of baby products such as cribs.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between Plaintiff's members who are citizens of California and Defendant that is a New Jersey corporation with its principal place of business located in New Jersey and the amount in controversy exceeds $75,000, exclusive of interest and costs.

18. Venue is proper pursuant to the forum selection clause set forth in the Non-Disclosure Agreement underlying this dispute. "This Agreement shall be governed and construed and interpreted in accordance with the laws of the State of New York" and "the sole and exclusive jurisdiction and venue for any litigation arising out of this Agreement shall be appropriate federal or state court located in New York County, State of New York."

19. Moreover, venue is proper because the actions giving rise to the instant dispute occurred in the State of New York, County of New York.

## THE FACTS

*Background*

20. BBBY was a subsidiary of Bed Bath & Beyond, Inc. ("Bed Bath & Beyond") that operated stores selling baby products and furniture.

21. In or around March 2023, Go Global learned of that Bed Bath & Beyond planned to file for bankruptcy protection.

22. Go Global expressed interest in acquiring BBBY's assets and was given access to BBBY's data to conduct due diligence.

23. From March 2023 through June 2023, Go Global used its proprietary modeling techniques to forecast the success of the BBBY brand in the event of Go Global's acquisition of the going concern and/or intellectual property assets of BBBY.

24. In furtherance of its interest in bidding for the assets of BBBY, on or about May 15, 2023, Go Global retained Ankura.

25. Go Global's agreement with Ankura contemplated, among other things, the services Ankura was to provide and the compensation Go Global was to pay for the provision of those services.

26. The agreement with Ankura also included a confidentiality provision, protecting confidential information shared by and among Go Global and Ankura during the term of the engagement.

27. On April 23, 2023, Bed Bath & Beyond, filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United State Bankruptcy Court for the District of New Jersey (Case No. 23-13359 0).

28. On April 25, 2023 (DE # 92), the Bankruptcy Court approved bidding procedures for the sale of Bed Bath & Beyond, as well as BBBY's assets.

29. The Bankruptcy Court ordered that an auction of BBBY's intellectual property assets on June 28, 2023 ("BABY IP Auction"), which would be followed by another auction with respect to all or substantially all of the assets of the BBBY brand on June 29, 2023 ("BABY Going-Concern Auction").

4

***Go Global is Introduced to DOM***

30. On June 9, 2023 Christian Tempke, a managing director at global investment bank, Lazard Frères & Co. LLC ("Lazard"), emailed Go Global's managing director Christian Feuer to introduce him to Milan Gandhi ("Gandhi").

31. Gandhi is the CFO/COO of Welspun USA, Inc. ("Welspun").

32. Welspun is a wholly owned subsidiary of WBGL, a public corporation in India.

33. Gandhi is responsible for Welspun's commercial operations, including finance and accounting, budgeting, warehousing and distribution, legal, commercial insurance, and credit risk review.

34. Relevant here, Gandhi was advising DOM in connection with its interest in pursuing BBBY.

35. In response to the introduction, Feuer proposed a Microsoft Teams meeting with Gandhi for June 10, 2023.

36. Gandhi responded that he would be glad to connect with Feuer and added DOM owner, Mark Srour, and CMO, Avish Dahiya, to the email chain to coordinate their availability for a meeting.

37. Dahiya emailed Feuer advising that Srour was not available for a call, but that he and Gandhi were available that afternoon.

38. Dahiya further advised that the NDA, which was sent to Avish in advance of the meeting, would be signed and returned to Go Global in advance of the meeting.

39. At 1:48pm on June 10, 2023 Dahiya transmitted the signed NDA to Go Global and Ankura.

5

40. At 3:32pm on June 10, 2023 Abishek Pathania, a senior associate at Ankura, transmitted the countersigned NDA to DOM.

41. Upon circulating the countersigned NDA to DOM, Dahiya, Gandhi and Srour were granted access to Go Global's secure, confidential data room.

*The Non-Disclosure Agreement*

42. The NDA contemplated that Go Global would "disclose Proprietary Information" to DOM.

43. Under the terms of the NDA, Proprietary Information is defined as " information concerning [] [BBBY]…information concerning [Go Global]…and all information derived therefrom, including without limitation, trade secrets (under state law and the Defend Trade Secrets Act), know-how, summaries, notes, processes, ideas, contracts, other technical, business, financial, customer and product development plans, forecasts, strategies, customer lists and data, financial information, employee information, pricing data, sales data, intellectual property of any nature, marketing plans, website designs, internet marketing or sales practices or strategies, and records containing or otherwise reflecting such information."

44. In exchange for access to Go Global's Proprietary Information, DOM agreed "not to initiate or maintain contact (except for those contacts made in the ordinary course of business and other than in connection with the Purpose) with any officer, director or employee or agent of [BBBY] regarding [BBBY]'s business, operations, prospects, or finances, except with the express permission of Global and then only subject to the terms of this Agreement."

45. The NDA also included a non-circumvention obligation:

> [DOM] covenants and agrees that [DOM] and its affiliates, and that [DOM] will cause its equity holders, directors, officers, managers, employees, agents, advisors or representatives **not to**, directly or indirectly, solicit, encourage, negotiate, or discuss with [BBBY], or enter into any agreement, understanding or commitment

6

regarding, a possible transaction, sale, merger, combination, consolidation, joint venture, partnership, recapitalization, restructuring, refinancing or other disposition of all or any material part of [BBBY] or its subsidiaries or any [] [BBBY]'s or its subsidiaries' assets or issued or unissued capital stock other than involving the potential transaction with [Go] Global, and only then with knowledge and express consent of [Go] Global ("Non-Circumvention Obligation").

(emphasis added).

46. The NDA further provides that the "Agreement shall be governed and construed and interpreted in accordance with the laws of the State of New York."

47. The parties to the NDA also agreed that "the sole and exclusive jurisdiction and venue for any litigation arising out of this Agreement shall be appropriate federal or state court located in New York County, State of New York."

48. The NDA also contains a clause providing for an award of reasonable attorneys' fees to the prevailing party in any dispute or litigation.

***The June 10, 2023 Meeting Between Go Global and DOM***

49. During the June 10, 2023 video conference meeting, DOM representatives communicated to Go Global and Ankura that DOM had no intention of going alone into the Section 363 bid process.

50. DOM admitted that it lacked the necessary retail experience and dropped out of the bidding process.

51. DOM is a baby furniture company that sells its products to retailers like Amazon, Burlington, Kohl's, Overstock, Home Depot, Walmart, and Wayfair.

52. DOM did not sell its products directly to consumers.

53. DOM did not operate any retail locations.

7

54. Representatives of DOM expressed an interest in producing furniture and managing the supply chain.

55. While DOM is had no experience owning or operating brick-and-mortar retail stores, Go Global was experienced in the development of brick-and-mortar retail stores post-acquisition, as well as with direct-to-consumer e-commerce.

56. DOM also disclosed that it was too far behind in its diligence with Lazard, and needed to "piggy-back" off Go Global's efforts to participate in a bid.

57. Indeed, whether DOM was still considering a separate bid was in the forefront of the June 10 conversation.

58. DOM confirmed that it was **not** pursuing a separate bid for BBBY.

59. This was precisely why DOM was presented with the NDA prior to the initial meeting and prior to granting DOM access to Go Global's data room – if Go Global knew that DOM would ultimately pursue a separate bid for the assets of BBBY, logically, Go Global would not have shared its proprietary financial models and valuable retail industry know-how with DOM.

60. With DOM's verbal confirmation that it was not pursuing a separate bid for BBBY and the protections of the NDA in place, Go Global engaged in discussions with DOM about a joint bid to buy the assets of BBBY.

61. Following the June 10 video call, Gandhi emailed the Go Global and Ankura participants, stating, in part, "We look forward to further exploring ways to partner in this transaction."

62. Representatives of DOM and Go Global also met in person to further discussions of a joint bid for BBBY.

8

63. On Monday, June 12, Go Global and DOM representatives met for dinner at Mike's Bistro in Manhattan.

64. During the meal, the parties continued their discussions of a joint bid and the confidential information shared by Go Global.

***DOM Accesses Go Global's Proprietary Financial Models, Trade Secrets and Other Confidential Information***

65. Data logs maintained by Ankura show that Dahiya and Srour accessed the secure data room on June 10, 2023, and June 14, 2023.

66. Go Global began compiling the information contained in the secure data room in March 2023, before the announcement of Bed Bath and Beyond's petition for bankruptcy.

67. The documents and information within the secure data room contained proprietary information and confidential trade secrets generated by Go Global in connection with its efforts to consummate a transaction for the purchase of the assets of BBBY.

68. For example, among the documents in the data room was a series of Microsoft Excel spreadsheets consisting of financial models projecting expected revenues and returns on investment over a period of five (5) years (based upon Go Global's proposed valuation and investment structure).

69. Go Global's financial models also projected sales, expenses, costs, and growth assumptions across BBBY's brick and mortar and digital channels.

70. Unlike the raw, prior-years' data provided to all potential bidders by Lazard and Alix Partners, Go Global's financial models resized the store fleet and outlined a growth strategy by channel.

71. Moreover, Go Global's proprietary analysis and recommendations concerning which BBBY brick and mortar retail locations should remain operational and which should be closed, based upon a time consuming and detailed review of store-by-store performance.

72. Go Global's projections considered deploying its modern technological ecosystem which that use cloud-based services for customer acquisition, customer segmentation and customer personalization, which provided for Go Global to compete in a dynamic retail environment.

73. DOM did not have any of this information prior to accessing Go Global's data room or discussing a joint bid with Go Global.

74. The documents included other Go Global proprietary information pertaining to the contemplated transaction, including:

    (a)    Gross sales projections;

    (b)    Proposed distribution structures for investors;

    (c)    Sales forecasts;

    (d)    Status of discussions with vendors to ensure continuity during transition periods;

    (e)    Target net revenues;

    (f)    Go Global's view of the strengths and weaknesses of BBBY's business channels and verticals;

    (g)    Transaction strategy and financing ratios; and

    (h)    Identification of key BBBY personnel and plans for business development.

75. The proprietary information shared with DOM was not raw data but, rather, was a set of forward-looking projections prepared by Go Global based on:

(a) Historical financials;

(b) Analysis of beneficial retail locations;

(c) Projections of what merchandise to stock and whether to venture into new sectors of apparel and soft goods, such as a "store" branded line of products;

(d) How to best extricate BBBY from Bed Bath and Beyond infrastructure and IT systems, as well as the cost of same; and

(e) A proprietary understanding of how to build brand equity and recognition, based upon Go Global's experience with Janie + Jack, Brums and other transactions.

76. In connection with the foregoing, Go Global obtained access to Bed Bath & Beyond's data systems through BBBY to analyze and determine how to extract BBBY's infrastructure and data management systems from the Bed Bath & Beyond.

77. Go Global also compiled information about replacing systems that would not be extracted, including recommendations of successor vendors and the like.

78. Following DOM's review of the financial models and other documents in the data room, Go Global and DOM exchanged emails concerning how Go Global prepared its analysis and arrived at its conclusions.

79. Indeed, Go Global personnel had spent hundreds of hours reviewing data and refining their analysis dating back to March 2023 – prior to BBBY entering bankruptcy and prior to Alix Partners advising BBBY on turnaround.

80. Thus, DOM received and accessed the product of months of work performed by Go Global personnel determining how to structure a purchase of certain assets of BBBY.

81. Go Global and DOM personnel also met in-person, with the Ankura representatives working with Go Global, in furtherance of pursuing a joint bid for the BBBY assets.

82. With the protections of the NDA in place, Go Global verbally shared additional insight into structuring a successful bid and turning around BBBY.

83. Members of Go-Global's deal team, with expertise in e-commerce, technology and business strategy shared their insight with DOM.

84. In a June 14, 2023 email exchange between Dahiya and Feuer, Feuer answered questions Dahiya posed concerning budget reconciliations, necessary technology support for BBBY's retail business and cost-cutting measures.

85. Feuer replied, in relevant part, that Go Global reached its analysis using a proprietary technology playbook consisting of strategies Go Global deployed in connection with other transactions.

86. Feuer also provided Dahiya insight about how to trim certain costs – a necessary step to ensuring BBBY would operate within budget and smoothly transition the business to an eventual purchaser.

87. Unbeknownst to Go Global, and despite DOM's obligations under the NDA, all the proprietary information disclosed by Go Global was evaluated by DOM personnel for the purposes of structuring a separate bid for the assets of BBBY.

*Go Global Prepares a Draft Stalking Horse Bid for the Assets of BBBY*

88. Go Global prepared a June 15, 2023 draft bid for the assets of BBBY (the "Bid").

89.In relevant part, the Bid provided that Go Global was prepared to offer $60,000,000.00 for the intellectual property and inventory of BBBY.

90.The Bid also stated that Go Global had received support from DOM, as DOM was impressed by Go Global's turnaround plan for BBBY given Go Global's successful carve-outs and turnarounds of brands such as ModCloth and Janie + Jack.

91.The Bid contained a detailed analysis of relevant factors, such as employee retention, stores assumed, and intellectual property assets to be acquired.

***DOM Violates the NDA by Submitting a Bid for the Assets of BBBY***

92.On or about June 19, 2023, Christian Feuer learned that DOM intended to submit its own bid for the assets of BBBY.

93.Immediately, Go Global and Ankura acknowledged that DOM signed the NDA, which included a non-circumvention clause.

94.Ankura expressed its concern that, since Go Global shared a version of its proposed offer with DOM (under the protection of the NDA) and provided DOM with its intimate knowledge of how to turnaround distressed brands in the retail sector, DOM would submit a bid based upon what it gleaned from Go Global's confidential information.

95.On June 28, 2023, the BABY IP Auction was held and DOM was deemed the Successful Bidder with its bid of $15.5 million.[1]

96.During a July 11, 2023 court hearing, the United States Bankruptcy Court for the District of New Jersey approved the sale of BBBY's intellectual property to DOM.

---

[1] By comparison, Bed Bath & Beyond's intellectual property assets (a much larger portfolio) were sold for $21 million.

97. By bidding on BBBY's intellectual property, DOM violated the NDA through its misappropriation of Go Global's proprietary, confidential information and its use of that information to bid for BBBY's intellectual property.

98. The very act of bidding on BBBY's intellectual property, without the participation or express written consent of Go Global, constituted a violation of the NDA.

99. DOM's excessive bid for BBBY's intellectual property completely undermined Global's strategy for purchase of the going concern.

100. DOM's inflated bid for the BBBY intellectual property undercut Go Global's ability to garner interest from partners in a bid on the going concern or other aspects of the business, such as retail locations.

101. Based on the exchange of information between the parties, governed by the NDA, DOM was aware that Global intended to purchase both BBBY's IP Assets and BBBY's Going-Concern for a collective $60 million, with the Going-Concern accounting for a greater percentage of the purchase price than the IP Assets.

102. DOM used this knowledge to make its bid for BBBY's IP assets, not only harming Global's ability to reformulate its strategy at such a late stage, but also reducing the value BBBY's Going-Concern, and thereby providing Bed Bath & Beyond's creditors with less than the fair-market value of BBBY's remaining assets.

103. In fact, DOM purchased 11 leases for BBBY retail locations throughout the northeast, based on Global's analysis and projections for growth, for only $1,700,000.00.

104. Without the knowledge DOM obtained from Global, DOM would have been unable to successfully bid for any of BBBY's assets.

## AS AND FOR A FIRST CAUSE OF ACTION
## (BREACH OF CONTRACT)

105. Go Global repeats and realleges Paragraphs 1 through 104 as if fully set forth herein.

106. On or about June 10, 2023, DOM executed an NDA with Go Global.

107. In accordance with the terms of the NDA, Go Global provided DOM with access to its secure data room related to its bid for the assets of BBBY that included but was not limited to, financial models, projections, sales forecasts, information about BBBY's vendors, Go Global's analysis of BBBY's business channels and vertical, transaction strategy, BBBY personnel contacts, and business development plans.

108. Go Global also shared its proposed Bid for the purchase of BBBY's assets which analyzed relevant factors such as employee retention, stores assumed and intellectual property assets to be acquired.

109. The NDA provides that DOM shall not "directly or indirectly, solicit, encourage, negotiate, or discuss with [BBBY], or enter into any agreement, understanding or commitment regarding, a possible transaction, sale, merger, combination, consolidation, joint venture, partnership, recapitalization, restructuring, refinancing or other disposition of all or any material part of [BBBY]" without Go Global, otherwise known as the Non-Circumvention Obligation.

110. DOM breached the Non-Circumvention Obligation by bidding on BBBY's intellectual property on June 28, 2023, (the bid was later approved by the United States Bankruptcy Court of the District of New Jersey on July 11, 2023.

111. At no time did DOM provide Go Global with written notice of its action as was required by the NDA.

112. DOM breached the NDA and has damaged and continues to damage Go Global.

15

113. By reason of the foregoing, Go Global is entitled to damages in an amount to be determined.

## AS AND FOR A SECOND CAUSE OF ACTION
### (AWARD OF ATTORNEYS' FEES AND COSTS)

114. Go Global repeats and realleges Paragraphs 105 through 113 as if fully set forth herein.

115. The June 10, 2023, NDA executed by DOM provides, "If any court of competent jurisdiction holds the non-prevailing party to be in violation, breach, or nonperformance of any of the terms of this letter agreement, then the non-prevailing party shall pay all reasonable costs of such action or suit, including reasonable attorneys' fees."

116. DOM has breached the NDA by bidding (and ultimately purchasing) BBBY's intellectual property in violation of the Non-Circumvention Obligation set forth in the NDA.

117. As DOM has breached the NDA, it is contractually obligated to pay Go Global's "reasonable costs… including reasonable attorneys' fees."

118. Based on the foregoing, Go Global is entitled to damages in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION
### (UNJUST ENRICHMENT)

119. Go Global repeats and realleges the allegations in Paragraphs 114 to 1118 as if fully set forth herein.

120. Go Global provided DOM with access to its secure data room which contained proprietary, confidential information that was integral to the acquisition of some or all of BBBY's assets including, but not limited to gross sales projections; proposed distribution structures for investors; sales forecasts; status of discussions with vendors to ensure continuity

16

during transition periods; target net revenues; Go Global's view of the strengths and weaknesses of BBBY's business channels and verticals; transaction strategy and financing ratios; and identification of key BBBY personnel and plans for business development, as well as Go Global's proprietary systems and models for brand acquisition.

121. DOM misled Go Global, stating it would partner with Go Global in the joint bid to acquire of BBBY's assets and that it would not go alone to acquire the assets of BBBY.

122. Instead, DOM used the information provided by Go Global, including information found it Go Global's secure data room and in Go Global's Bid, that was provided in furtherance of the parties' proposed partnership, to develop and submit its own competing bid for BBBY's assets.

123. DOM has been unjustly enriched at Go Global's expense because DOM acquired BBBY's assets using the proprietary information and know-how compiled and analyzed by Go Global.

124. DOM has not compensated Go Global, and has been unjustly enriched at Go Global's expense.

125. Based on the foregoing, Go Global is entitled to damages in an amount to be determined at trial.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(CONSTRUCTIVE TRUST)**

126. Go Global repeats and realleges the allegations in Paragraphs 119 to 125 as if fully set forth herein.

127. Go Global and DOM entered a confidential relationship, based on the sharing of proprietary information to enter a joint bid to purchase BBBY's assets

128. On June 10, 2023, DOM through its representatives, promised to Go Global that it would not make a bid for BBBY's assets alone and that it would partner with Go Global in Go Global's Bid to purchase BBBY's assets and intellectual property.

129. In reliance on DOM's promise, Go Global shared proprietary information with DOM regarding a turnaround of BBBY including, but not limited to gross sales projections; proposed distribution structures for investors; sales forecasts; status of discussions with vendors to ensure continuity during transition periods; target net revenues; Go Global's view of the strengths and weaknesses of BBBY's business channels and verticals; transaction strategy and financing ratios; and identification of key BBBY personnel and plans for business development, as well as Go Global's proprietary systems and models for brand acquisition.

130. As a result of the information obtained from Go Global, DOM crafted its own bid for BBBY's intellectual property; directly contradicting the promise it made to Go Global that it would not bid for BBBY's assets.

131. If Go Global knew that DOM was going to bid for BBBY's assets without Go Global's participation, Go Global would not have shared its proprietary information with DOM.

132. Thus, DOM has been unjustly enriched.

133. Based on the foregoing, Go Global is entitled to damages in an amount to be determined at trial.

134. Based on the foregoing, Go Global is entitled to the imposition of a constructive trust over the assets of BBBY acquired by DOM and the revenues and profits earned in connection therewith.

**WHEREFORE**, Plaintiff, Go Global respectfully requests judgment as follows:

(a)     as to the First Cause of Action, damages against Defendant in an amount to be determined;

(b)     as to the Second Cause of Action, damages against Defendant in an amount to be determined;

(c)     as to the Third Cause of Action, damages against Defendant in an amount to be determined;

(d)     as to the Fourth Cause of Action, damages against Defendant in an amount to be determined, together with the establishment of a constructive trust governing the proceeds, profits and other property and intellectual property wrongfully obtained by Defendants in violation of the Non-Disclosure Agreement; and

(l)     such other and further relief under law or equity as the Court may deem just and proper, including pre-judgment interests and an award of attorney fees and costs.

Dated:  September 14, 2023

> Respectfully submitted,
>
> **FALCON RAPPAPORT & BERKMAN LLP**
>
> By: */s/ Paul M. O'Brien*
> Paul M. O'Brien, Esq.
> 265 Sunrise Highway, Suite 50
> Rockville Centre, NY 11570
> Telephone: (516) 599-0888
> pobrien@frblaw.com
>
> *Attorneys for Plaintiff Go Global Retail LLC*