UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GO GLOBAL RETAIL LLC,

Plaintiff,

v.

DREAM ON ME INDUSTRIES, INC., and DREAM ON ME, INC.

Defendants.

Case No. 1:23-cv-07987-AS

CIVIL ACTION

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

GREENBAUM, ROWE, SMITH & DAVIS LLP
75 Livingston Avenue
Suite 301
Roseland, New Jersey 07068
(973) 535-1600
Attorneys for Defendant, Dream On Me Industries, Inc.

On the Brief:
Jessica M. Carroll, Esq.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 3

A. Factual Background .......... 3

B. Procedural Background .......... 6

LEGAL ARGUMENT .......... 7

STANDARD OF REVEIW .......... 7

POINT I .......... 9

PLAINTIFF'S AMENDED COMPLAINT IS BARRED BY THE BANKRUPTCY COURT'S JULY 11, 2023, ORDER APPROVING THE SALE OF THE BBBY ASSETS TO DOM .......... 9

A. Plaintiff's Amended Complaint is a Collateral Attack of the Sale Order. .......... 9

B. Plaintiff's Claims in the Amended Complaint are Untimely .......... 12

POINT II .......... 14

DOM COULD NOT HAVE CAUSED ANY DAMAGES BECAUSE PLAINTIFF DID NOT SUBMIT A BID AT THE SECTION 363 SALE. .......... 14

CONCLUSION .......... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allen v. McCurry*,
449 U.S. 90 (1980) ........ 9

*Ashcroft v. Iqbal*,
556 U.S. 622 (2009) ........ 7

*Baker v. Simpson*,
613 F.3d 346 (2d Cir. 2010) ........ 10

*In re Bed Bath & Beyond, Inc., et al*,
Case No. 23-cv-13359-VFP (Bankr. D.N.J. July 11, 2023) ........ 2, 4

*Brown Media Corp. v. K&L Gates, LLP*,
854 F.3d 150 (2d Cir. 2017) ........ 10, 14

*Candlewood Partners LLC v. Hedstrom Corp.*,
No. 04 B 38543, 2008 WL 4542966 (N.D. Ill. Apr. 22, 2008) ........ 12, 13, 14

*Chase Manhattan Bank, N.A. v. Celotex Corp.*,
56 F.3d 343 (2d Cir. 1995) ........ 9, 10

*In re Colony Hill Assocs.*,
111 F.3d 269 (2d Cir. 1997) ........ 12

*Connolly v. Hanes*,
763 F.Supp. 6 (S.D.N.Y. 1991) ........ 8

*DiFolco v. MSNBC Cable LLC*,
622 F.3d 104 (2d Cir. 2010) ........ 8

*DW Last Call Onhore, LLC v. Fun Eats and Drinks LLC*,
2018 WL 1470591 (S.D.N.Y. Mar. 23, 2018) ........ 7

*Est. of Lennon by Lennon v. Screen Creations, Ltd.*,
939 F. Supp. 287 (S.D.N.Y. 1996) ........ 8

*Federated Dep't Stores, Inc. v. Moitie*,
452 U.S. 394 (1981) ........ 9

*Green v. Santa Fe Indus., Inc.*,
514 N.E.2d 105 (1987) ........ 9, 10

*In re Gucci*,
126 F.3d 380 (2d Cir. 1997)....................12

*Henschke v. New York Hosp.-Cornell Med. Ctr.*,
821 F. Supp. 166 (S.D.N.Y. 1993)....................8

*Hill v. Sullivan*,
125 F.R.D. 86 (S.D.N.Y.1989)....................8

*In re Layo*,
460 F.3d 289 (2d Cir. 2006)....................9

*NLRB v. United Techs. Corp.*,
706 F.2d 1254 (2d Cir. 1983)....................9

*Papasan v. Allain*,
478 U.S. 265 (1986)....................8

*Parnes v. Mast Prop. Invs., Inc.*,
776 F. Supp. 792 (S.D.N.Y. 1991)....................7, 8

*In re Reinert*,
597 Fed. Appx. 139 (3d Cir. 2015)....................12, 14

*Sure-Snap Corp. v. State St. Bank and Tr. Co.*,
948 F.2d 869 (2d Cir. 1991)....................10

*Tagare v. NYNEX Network Sys. Co.*,
921 F. Supp. 1146 (S.D.N.Y. 1996)....................8

*Todaro v. Orbit Int'l Travel, Ltd.*,
755 F. Supp. 1229 (S.D.N.Y. 1991)....................8

*In re Waypoint Leasing Holdings Ltd.*,
607 B.R. 143 (Bankr. S.D.N.Y. 2019)....................14, 15

**Rules**

Bankruptcy Rule 7052....................4, 5

Federal Rule of Civil Procedure 12(b)(6)....................7

**Statutes**

28 U.S.C. § 158(a)....................6

Defend Trade Secrets Act....................7

## PRELIMINARY STATEMENT

The Amended Complaint filed by Plaintiff, Go Global, LLC ("Plaintiff") does nothing to cure the initial complaint's inherent flaw that it was barred by an order of the bankruptcy court. As such, Defendant, Dream on Me Industries, Inc., ("DOM")[1] moves to dismiss the Amended Complaint because it only adds irrelevant details and two unsupported new Counts. Plaintiff should not be granted additional leave to file a Second Amended Complaint because it is clear from both the original and Amended Complaint that (1) Plaintiff's claims are barred by a prior order entered by a bankruptcy court, and (2) Plaintiff still does not sufficiently plead that DOM did anything to cause it damages.

Plaintiff's initial Complaint was premised on allegations that DOM breached a Non-Disclosure Agreement ("NDA") by improperly using confidential and proprietary information obtained from Plaintiff to successfully bid on the intellectual property assets of Buy Buy Baby ("BBBY") during a Section 363 sale after Bed Bath & Beyond, Inc. ("BB&B" or "Debtor") filed for Chapter 11 bankruptcy. Plaintiff's Amended Complaint adds allegations that this alleged breach has been continuing in nature but nevertheless circles back to DOM's purchase of BBBY's intellectual property assets.

Although Plaintiff's Amended Complaint acknowledges that Plaintiff is aware that a bankruptcy court approved the sale on July 11, 2023 ("Sale Order"), Plaintiff nonetheless disregards the effect of the Sale Order. The Sale Order expressly provided, in relevant part, that "all persons and entities . . . <u>are hereby . . . forever barred, estopped and permanently enjoyed from asserting such claims against any Purchaser Party [defined as DOM] or its property (including the Acquired Assets)</u>." (emphasis added). On notice of this inherent flaw, Plaintiff

[1] Dream On Me, Inc. is improperly named in the Amended Complaint as it is not a legal entity that can be sued and should therefore be dismissed.

alleges nothing that disproves its preclusive effect, but instead adds immaterial allegations with claims that are also barred because they are based on the same operative facts leading to the sale.

Distilled to their essence, the crux of Plaintiff's allegations are that there was collusion and bad faith during the bankruptcy process—which are facts that the bankruptcy court expressly found did not exist. Plaintiff's failure to timely object during the bankruptcy proceeding, or to timely appeal the Sale Order, is fatal to that theory. As a matter of bankruptcy procedure, the bankruptcy court thoroughly vetted all bidders (including DOM), ensured that notice of the sale hearing was adequate to all parties, and allowed all parties an opportunity to object before it was final. DOM argued in its initial motion to dismiss that the Complaint should be dismissed because the bankruptcy court expressly found that DOM operated in good faith prior to it approving the sale. In the Amended Complaint, Plaintiff still ignores the fair and court-approved process by filing an untimely appeal as a collateral attack questioning the reliability and sanctity of the Section 363 sale through this action.

Significantly, the Amended Complaint remains speculative as to what damages were caused because Plaintiff fails to allege that it made a bid at the Section 363 sale or to explain why it did not actively participate in the sale process. Devoid of these allegations, the Amended Complaint fails to allege how Plaintiff would have been the successful bidder but for DOM's bid that allegedly breached the NDA. Said differently, if Plaintiff did not submit a bid, then logically there were other bids for the BBBY assets, and those assets would have gone to the second highest bidder if DOM had not bid. *In re Bed Bath & Beyond, Inc., et al*, Case No. 23-cv-13359-VFP (Bankr. D.N.J. July 11, 2023). Therefore, Plaintiff cannot establish causation: if Plaintiff did not submit a bid, Plaintiff would not have obtained the BBBY assets because the second highest bidder would have received the BBBY assets.

Moreover, Plaintiff is grasping for straws by adding additional causes of action sounding in violations of federal law and misappropriation of trade secrets. Sadly, asserting those additional counts does not demonstrate damages if those new claims are premised on the same operative facts leading to the Section 363 sale which are barred by the Sale Order. Plaintiff simply takes another road to the same exit. Accordingly, Plaintiff's Amended Complaint should be dismissed.

## STATEMENT OF FACTS

### A. Factual Background

This matter arises out of an NDA that Plaintiff believes expressly forbid DOM from bidding on BBBY's assets during a Section 363 sale after BB&B filed for Chapter 11 bankruptcy. The Amended Complaint states that BBBY was a subsidiary of BB&B and that on April 23, 2023, BB&B filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court"). The Bankruptcy Court entered an Order on July 11, 2023, approving the sale of BB&B's acquired assets, and its subsidiaries, free and clear of all liens, claims, and encumbrances (the "Bankruptcy Order" or "Sale Order"). It also approved bidding procedures for the sale of both BB&B and BBBY. More specifically, the Bankruptcy Court ordered an auction for BBBY's intellectual property assets to be held on June 28, 2023, and an auction for the remaining assets of BBBY to be held on June 29, 2023. Amended Complaint, ECF No. 29, attached as Exhibit A to the Declaration of Jessica M. Carroll, Esq. submitted in support of this motion.

Plaintiff's Amended Complaint alleges that it entered into the NDA with DOM to explore ways to form a partnership for purposes of submitting a stalking horse bid for the assets of BBBY jointly. Ultimately, DOM independently submitted a successful bid for BBBY's intellectual property assets. Significantly, Plaintiff did not submit a bid and did not object to or appeal the Bankruptcy Order after DOM submitted its bid (i.e., the alleged breach) and the Bankruptcy Court

approved the sale. Moreover, Plaintiff fails to allege how it suffered any damages resulting from DOM's bid since there were other bidders at the sale which would have acquired the BBBY assets had DOM not bid at all. *Id.*

Because the Amended Complaint refers to the July 11, 2023, court hearing whereby the Bankruptcy Court approved the sale of BBBY's intellectual property to DOM, the Bankruptcy Order is incorporated in the Complaint by reference. *Id.* at ⁋ 106; *see also* Order Approving Sale, *In re Bed Bath & Beyond, Inc., et al*, Case No. 23-cv-13359-VFP (Bankr. D.N.J. July 11, 2023), ECF No. 1314, attached as Exhibit B to the Declaration of Jessica M. Carroll, Esq. submitted in support of this motion. The Bankruptcy Order authorized BB&B to enter into an asset purchase agreement ("APA") dated as of June 30, 2023. It defined the Purchaser as: Mark Srour-Serure, Dream On Me Industries, Inc., Dream 545 Weston Canal Road, LLC (collectively referred to as the "Purchaser")[2], and other signatory that "extend to and include (a) any designee of such Purchaser…" *Id.* at Fn 2.

Notably, the Bankruptcy Court's findings and conclusions protect DOM from subsequent litigations arising out of and relating to its acquisition of the BBBY assets pursuant to the APA and the bankruptcy proceeding. The "General Provisions" under Section I of the Bankruptcy Order provides, in relevant part, that: (1) the findings and conclusions set forth therein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052; (2) that those parties who did not object or withdrew their objections to the motion are deemed to have consented pursuant to section 363(f)(2); and (3) that notice of the motion and sale hearing was adequate,

[2] The Amended Complaint improperly identifies Dream On Me, Inc. as a Defendant. Dream on Me, Inc. is not a legal entity and the actual purchaser of BBBY's assets was Dream On Me Industries, Inc.

appropriate, fair and equitable under the circumstances, and complied in all respects with the Bankruptcy Code, the Bankruptcy Rules, and the Bidding Procedures. *Id.* at § I, ¶¶ 1-4.

Section II of the Bankruptcy Order, in turn, approved the APA and directed the parties to take any and all action necessary or desirable to implement the transaction. Additionally, Section II rendered the Sale Order, along with the terms and provisions of the APA, binding upon any holders of claims, encumbrances, and interests in, against, or on all or any portion of the acquired assets. *Id.* at § II, ¶¶ 5-8.

Most significantly, Section IV of the Bankruptcy Order prohibits actions against the DOM after having found that DOM operated in good faith throughout the sale process. *Id.* at § III, Good Faith of the Purchaser, ¶¶ H-I. Specifically, the Bankruptcy Order provides that "[n]either the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the APA or the Transaction to be avoided…" *Id.* Indeed, "[t]he Purchaser has proceeded in good faith in all respects in connection with the Transaction." *Id.* Likewise, Paragraph 23 in Section IV of the Bankruptcy Order found that the APA was entered into without collusion *Id.* at § IV ¶ 23.

Section IV of the Bankruptcy Court's holdings enumerate prohibitions of claims and actions against DOM. Specifically, Paragraph 16 provides:

> 16. All persons and entities that are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed to or by the Purchase pursuant to the APA are hereby directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date. Subject to terms, conditions, and provisions of this Sale Order, **all persons and entities** including, without limitation, the Debtors, creditors, employees, former employees, shareholder, administrative agencies, tax and regulatory authorities, governmental departments, secretaries of state, federal, state and local officials, litigation claimants, and their respective successors and assigns, are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and/or transfer the Acquired Assets to the Purchaser (or its designee) in accordance with the terms of the APA and this Sale Order and **are hereby forever barred, estopped and permanently enjoined**

> **from asserting such claims against any Purchaser Party or its property (including the Acquired Assets)**.

*Id.* at § IV, ⁋ 16. (emphasis added). Additionally, Paragraph 22 provides:

> 22. Effective upon the Closing, **all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding, against any Purchaser Party** or their respective assets (including, without limitation, the Acquired Assets), with respect to any claim in the chapter 11 cases or **in connection with or related to the Transaction, the Debtors, or the Acquired Assets**.

*Id.* at § IV, ⁋ 22.

Furthermore, the provisions memorialize that the Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a) and that the Bankruptcy Court found that the Federal Rules of Civil Procedure "expressly directs entry of judgment as set forth" within the Bankruptcy Order. *Id.* at § I, ⁋ C and § IV, ⁋ 24.

### B. Procedural Background

Plaintiff filed a four-count Complaint on September 14, 2023. Complaint, ECF No. 5. The First Cause of Action alleged that DOM's bid on BBBY's intellectual property (which was approved by the Bankruptcy Court on July 11, 2023) breached the parties' NDA because DOM failed to provide Plaintiff with written notice in advance of bidding. *Id.* at ⁋⁋ 105-113. The Second Cause of Action sought attorneys' fees and costs pursuant to the NDA. *Id.* at ⁋⁋ 114-118. The Third Cause of Action alleged unjust enrichment because DOM formulated its bid by allegedly using Plaintiff's proprietary information that it accessed because of the NDA; the Fourth Cause of Action sought a constructive trust over the BBBY assets DOM acquired, along with the revenues and profits it earned, in connection with the Section 363 sale. *Id.* at ⁋⁋ 119-134.

DOM filed a Motion to Dismiss on November 21, 2023 ("MTD") because Plaintiff's allegations challenged the adequacy and reliability of the Bankruptcy Order as the final entry of

judgment it ordered. *See* ECF No. 16. DOM also argued that Plaintiff did not suffer any damages because Plaintiff's damages were speculative without a causal link to DOM's alleged breach.

On December 22, 2023, Plaintiff amended the complaint to add two additional causes of action and allege additional facts. Exhibit A. The additional facts allege that DOM's behavior is continuing in nature, that its behavior is resulting in continuing damages, and that DOM used proprietary information to unjustly enrich itself and maximize the value of its purchase after purchasing BBBY's assets. *Id.* at ¶¶ 119-125; *Id.* at ¶¶ 134-151. The additional two causes of action relate to Plaintiff's proprietary forecasts, financial models, data, and strategy operating plans that DOM purportedly misappropriated by violating the NDA and causing loss in profits, goodwill, competitive advantage, and business opportunities. Specifically, the Fifth Cause of Action alleges a violation of the Defend Trade Secrets Act ("DTSA") and the Sixth Cause of Action alleges common law misappropriation. None of these additional allegations or Counts correct the deficiencies in Plaintiff's pleading.

## LEGAL ARGUMENT

## STANDARD OF REVEIW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint. *DW Last Call Onhore, LLC v. Fun Eats and Drinks LLC*, 2018 WL 1470591, at *3 (S.D.N.Y. Mar. 23, 2018). Pursuant to *Rule* 12(b)(6), a district court may dismiss the complaint if it does not contain sufficient factual matter to state a plausible claim on its face. *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Parnes v. Mast Prop. Invs., Inc.*, 776 F. Supp. 792, 795 (S.D.N.Y. 1991) (quoting *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir. 1985)) (dismissal under Rule 12(b)(6) only if "it appears 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"). A district court will read the allegations generously,

accepting "plaintiff's allegations of fact as true[,]" while drawing all reasonable inferences "in favor of the party opposing the motion[,]" *Parnes*, 776 F. Supp. at 795; *Papasan v. Allain,* 478 U.S. 265, 283 (1986); *Connolly v. Hanes*, 763 F.Supp. 6, 9 (S.D.N.Y. 1991); *Hill v. Sullivan,* 125 F.R.D. 86, 90 (S.D.N.Y.1989) ("all allegations in plaintiffs' amended complaint must be accepted as true and liberally construed."); *Todaro v. Orbit Int'l Travel, Ltd.*, 755 F. Supp. 1229, 1233 (S.D.N.Y. 1991) (in deciding motion to dismiss, court must limit analysis to four corners of complaint and accept "plaintiff's allegations as true, together with such reasonable inferences as may be drawn in his favor.").

While the district courts "are not permitted to consider factual matters submitted outside of the Complaint[,]" it is within the district court's discretion whether to exclude any additional submissions or to convert the motion into one for summary judgment. *Tagare v. NYNEX Network Sys. Co.*, 921 F. Supp. 1146, 1149 (S.D.N.Y. 1996); *Henschke v. New York Hosp.-Cornell Med. Ctr.*, 821 F. Supp. 166, 168 (S.D.N.Y. 1993); *Est. of Lennon by Lennon v. Screen Creations, Ltd.*, 939 F. Supp. 287, 292 (S.D.N.Y. 1996) (motion will remain as one for dismissal rather than summary judgment "where affidavits [are] scanty and inconclusive and would not assist court in resolving motion as one for summary judgment."). However, a court may consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint[,]" along with documents the complaint relies on for its terms to effectively render the document so integral to the complaint that there is no dispute as to its authenticity and accuracy. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

## POINT I

## PLAINTIFF'S AMENDED COMPLAINT IS BARRED BY THE BANKRUPTCY COURT'S JULY 11, 2023, ORDER APPROVING THE SALE OF THE BBBY ASSETS TO DOM.

### A. Plaintiff's Amended Complaint is a Collateral Attack of the Sale Order.

Plaintiff's belated claims against DOM are an impermissible collateral attack on the Sale Order and the claims in the Amended Complaint are barred under the Sale Order and *res judicata*.

The doctrine of *res judicata* precludes Plaintiff from relitigating issues that were or could have been raised in the Bankruptcy Court before it entered the Sale Order, which was a final judgment on the merits, because Plaintiff was in privity with the parties who bid at the Section 363 Sale. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Allen v. McCurry*, 449 U.S. 90, 94 (1980). When determining whether *res judicata* will bar a subsequent action, a court considers if "(1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same." *In re Layo*, 460 F.3d 289, 292 (2d Cir. 2006) (quoting *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 87–88 (2d Cir. 1997)). Additionally, the preclusive effect will depend on "whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983)).

Whether privity exists is "a functional inquiry in which formalities of legal relationships provide clues but not solutions." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995). To establish privity, there must be a connection between the parties "such that the interests of the nonparty can be said to have been represented in the prior proceeding." *Green v. Santa Fe Indus., Inc.*, 514 N.E.2d 105, 108 (1987); *Celotex Corp.*, 56 F.3d at 346 (federal doctrine uses privity in similar way to use under New York law). Privity is determined by whether the

party against whom *res judicata* is asserted had the same incentive as those who were parties to the prior action so much that its interest was sufficiently similar enough to have been represented. *See generally id.*

In the context of a bankruptcy proceeding, the Second Circuit determines whether *res judicata* applies by analyzing "whether an independent judgment in a separate proceeding would impair or destroy rights or interests established by the judgment entered in the first action." *Id.* at 162. *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 162 (2d Cir. 2017) (recognizing that *res judicata* "can be an awkward fit when applied to bankruptcy proceedings" because bankruptcy proceeding is fundamentally different from a civil action)(citations omitted). A bankruptcy court has jurisdiction to consider issues affecting the adjudication of claims that were "an essential part of administering the estate" and "implicate the integrity of the entire bankruptcy process." *Id.* at 160; *see generally Baker v. Simpson*, 613 F.3d 346, 350 (2d Cir. 2010). As such, the Second Circuit holds that *res judicata* bars a subsequent lawsuit filed by a plaintiff that failed to raise issues that could have impaired or destroyed the rights or interests established by the bankruptcy order or would have caused the bankruptcy court to structure a different disposition during the bankruptcy proceeding had those issues and facts been known. *Id.* at 162; *Sure-Snap Corp. v. State St. Bank and Tr. Co.*, 948 F.2d 869, 876 (2d Cir. 1991).

Here, Plaintiff's Amended Complaint is barred by *res judicata* because the Bankruptcy Court entered a final judgment on the merits, the Bankruptcy Court had competent jurisdiction, and Plaintiff could have asserted these claims during the bankruptcy proceeding. The Sale Order explicitly states that it constitutes a final order and that the Bankruptcy Court expressly found no reason preventing entry of the Sale Order. So, on July 11, 2023, the Bankruptcy Court approved the sale of BB&B's assets, along with BBBY's assets to DOM, and set forth approved bidding

procedures by ordering an auction of BBBY's intellectual property. More specifically, the Bankruptcy Order authorized BB&B to enter into an APA with DOM on June 30, 2023. Exhibit B, ECF Doc. No.1314.

Included in the Sale Order are built in protections by the Bankruptcy Court that explicitly prohibit subsequent actions such as this one against DOM. Specifically, Paragraph 16 provides that "all persons and … **are hereby forever barred, estopped and permanently enjoined from asserting such claims against any Purchaser Party or its property (including the Acquired Assets)**. *Id.* at § IV ⁋ 16. (emphasis added). Additionally, Paragraph 22 provides that "**all persons and entities** are forever prohibited and enjoined from commencing or continuing…any action…whether in law or equity… against any Purchaser Party…or any claim…**in connection with or related to the Transaction, the Debtors, or the Acquired Assets**. *Id.* at § IV ⁋ 22 (emphasis added). Read together, Paragraphs 16 and 22 forever bar, estop, and permanently enjoin entities like Plaintiff from commencing or continuing any judicial action against DOM, whether in law or in equity, if the claims relate to the sale of BBBY's intellectual assets.

Consequently, Plaintiff's entire Amended Complaint fails to assert any claims upon which relief can be granted. Count One for breach of contract must be dismissed because it is premised on an alleged breach of the NDA that was entered into in anticipation of submitting a bid at the Section 363 sale, and the damages sought are a result of DOM purchasing the BBBY assets at the Section 363 sale. Similarly, Count Two seeking attorneys' fees, which is premised on the NDA and breach of contract claim, equally fails. Additionally, Counts Three and Four should be dismissed because unjust enrichment is an equitable claim and a constructive trust is an equitable remedy—both of which claims are barred by Paragraph 22. *Id.* Finally, Counts Five and Six

should be dismissed because the additional claims rely on the same operative facts and are thus barred by the Bankruptcy Order for the same reasons argued above.

**B. Plaintiff's Claims in the Amended Complaint are Untimely.**

Plaintiff should have alleged a breach of the NDA against DOM during the bankruptcy proceedings. Indeed, as a matter of public policy and judicial administration, Plaintiff was compelled to do so given that the allegations here would have undermined and jeopardized the sanctity of the Section 363 sale and could have changed the result if proven to be true. Plaintiff can hardly argue that it was unaware of the Bankruptcy or the Sale – indeed, they are referred to in the Amended Complaint directly.

It would undo the finality of the bankruptcy proceeding if parties were permitted to take subsequent positions once a bankruptcy sale becomes final after failing to object or appeal to the sale at the time of the bankruptcy. *See In re Reinert*, 597 Fed. Appx. 139, 141 (3d Cir. 2015) (holding that debtor who never objected to sale or appealed could not take contrary position in later state-court action). "Intrinsic fairness" and findings of a good faith purchaser evaluates "the integrity of [the purchaser's] conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made." *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997). "A purchaser's good faith is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Id.* (citations omitted). In short, an unsuccessful or "disqualified" bidder has standing to object in a bankruptcy proceeding when the allegations could destroy the "intrinsic fairness" of the bankruptcy sale by demonstrating there was not a good faith purchaser. *See e.g., In re Colony Hill Assocs.*, 111 F.3d 269, 274 (2d Cir. 1997).

To protect the debtor and maximize the value of its assets during a bankruptcy proceeding, courts have given standing to those who do not make a bid at the Section 363 sale. *See Candlewood*

*Partners LLC v. Hedstrom Corp.*, No. 04 B 38543, 2008 WL 4542966, at *1-2 (N.D. Ill. Apr. 22, 2008) (affirming that claimant had standing to appeal based on nature of objection during bankruptcy proceeding). There, the District Court discussed the effects of *res judicata* in the subsequent state lawsuit against the successful bidder by reasoning that the claimant's "ulterior motives" highlighted how its failure to object to the sale undermined the finding of good faith in a bankruptcy proceeding. *Id.* at *3.

Here, Plaintiff failed to timely raise its claims against DOM. During the bankruptcy proceeding, it received notice of the proceeding and was provided a forum, along with the other bidders and potential bidders, to prove any collusion or bad faith by any potential bidders while the Bankruptcy Court sorted out and allocated BBBY's assets to maximize the value of those assets. The "General Provisions" under Section I of the Bankruptcy Order provides, in relevant part, that notice of the motion and sale hearing was adequate, appropriate, fair and equitable and that the parties who did not object are deemed to have consented. *Id.* at § I, ¶¶ 2-3. Had Plaintiff expressed its concerns, and if successful, the challenge could have vacated the sale and another entity would have been awarded the bid. Instead, the Bankruptcy Court found that DOM operated in good faith throughout the sale process. *Id.* at § III ¶¶ H-I. Specifically, the Bankruptcy Order provides that "[n]either the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the APA or the Transaction to be avoided…" Indeed, "[t]he Purchaser has proceeded in good faith in all respects in connection with the Transaction." *Id.* Likewise, Paragraph 23 in Section IV found that the APA was entered into without collusion *Id.* at § IV ¶ 23.

Similar to the plaintiff in *Candlewood Partners,* Plaintiff had standing to object despite not having made a bid or appearing on the list of potential buyers and these rights were protected by Paragraph E or the Sale Order. *Id.* at §II, ¶ E ("reasonable opportunity to object and be heard with

respect to the Transaction, the Motion and the relief requested therein and provided in this Sale Order has been afforded to all interested persons and entities…"); *Candlewood Partners*, 2008 WL 4542966, at *2. Likewise, Plaintiff's "ulterior motives" for bringing this lawsuit cannot be overlooked given the need to separate related actions following the finding of good faith in a bankruptcy sale proceeding. *Id.* at *3; *In re Reinert*, 597 Fed. Appx. at 141. The Bankruptcy Court found that DOM operated in good faith while negotiating, proposing and entering into the APA and that the APA was entered without collusion. Exhibit B, ECF Doc. No.1314, § III ¶¶ H-I.

As a matter of public policy, allowing Plaintiff's case to continue would circumvent and undermine the validity of the Sale Order (and by extension, all other sale orders entered by bankruptcy courts) because if Plaintiff's allegations were true, then the sale would be void and the bankruptcy decision vacated. By untimely asserting claims that purportedly expose an unjust circumvention by DOM during the sale process affects the rights and interests established by the Bankruptcy Order would force the need for the Bankruptcy Court to structure a different disposition. *Brown Media Corp*, 854 F.3d at 162. Accordingly, the Complaint should be dismissed because the claims it asserts are barred by the Sale Order.

## POINT II

### DOM COULD NOT HAVE CAUSED ANY DAMAGES BECAUSE PLAINTIFF DID NOT SUBMIT A BID AT THE SECTION 363 SALE.

Irrespective of whether Plaintiff can prove that DOM breached the NDA, Plaintiff suffered no harm if there is no causal link between DOM's alleged misconduct and any damages Plaintiff allegedly suffered. If Plaintiff's end game was to purchase BBBY's intellectual property assets, and Plaintiff did not submit a bid, it belies logic how any misconduct could have caused Plaintiff damage when it was impossible for Plaintiff to have even been the successful bidder.

Bankruptcy Courts have dismissed actions brought by a disappointed stalking horse bidder when the complaint failed to allege how the defendant breached a "no contact" provision of an NDA to have caused any damage to the debtor. *In re Waypoint Leasing Holdings Ltd.*, 607 B.R. 143, 154 (Bankr. S.D.N.Y. 2019). There, the Bankruptcy Court reasoned that, even assuming the alleged breach to be true, the allegations only speculated that those "contacts" deprived the debtor of receiving competing bids for the assets and the additional value that those bids may have realized. *Id.* Similarly, the allegations failed to allege that plaintiff's bid was higher—as that would be a critical piece of information in determining whether the debtor was damaged. *Id.* Equally implausible was that a third party would have made an offer higher and better than the successful bidder when an alternative bid would have triggered a break-up fee and the overall amount needed for the alternative bid to qualify as "higher and better" would have exceeded "the bounds of wishful thinking." *Id.*

Here, Plaintiff fails to set forth any facts showing how DOM's bid caused Plaintiff any damage. First, Plaintiff's Amended Complaint admits that Plaintiff did not submit a bid at the auction – a critical fact in determining whether DOM caused Plaintiff any damages. Second, the Amended Complaint contains no allegations as to the value or the actual amount Plaintiff intended to bid for BBBY's intellectual property assets if it had made a bid. Instead, the Amended Complaint refers to DOM's successful bid of $15.5 million without any reference to that or comparison to the second highest bidder. Third, the Amended Complaint does not allege that there were no other bidders, nor does it inform the Court that the second highest bid would have been successful if DOM did not bid in alleged compliance with the NDA. Because Plaintiff alleges that it did not submit a bid, and because the BBBY assets would have gone to the next highest bidder if DOM did not submit a bid, Plaintiff cannot plausibly allege any damages flowing from DOM's

alleged breach of the NDA, or other conduct related to its bid, which support's Plaintiff's claims. Alleging that DOM's conduct is continuous in nature by using its proprietary information to grow BBBY's assets is speculation and a desperate attempt at a last-ditch effort to raise questions of fact. Concisely stated, Plaintiff's Complaint is fatally deficient because Plaintiff cannot show that but for DOM's bid (i.e., the alleged breach), Plaintiff would have obtained BBBY's assets over every other bidder. As Plaintiff cannot plausibly allege any damages caused by DOM to support its claims, the Amended Complaint should be dismissed in its entirety.

## CONCLUSION

For the foregoing reasons, DOM respectfully requests that the Court grants its motion to dismiss because: (a) the claims in Plaintiff's Amended Complaint are barred by the Sale Order, and (2) Plaintiff does not allege, and can never prove, that DOM caused it any damages because Plaintiff did not bid at the Section 363 sale and the BBBY assets would have gone to the second highest bidder if DOM was not successful.

**GREENBAUM, ROWE, SMITH &DAVIS LLP**
Attorneys for Defendant,
Dream On Me Industries, Inc.

By: ______________________________
Jessica M. Carroll, Esq.

Gary E. Fox, Esq.
FOX & MELOFCHIK, LLC
Co-counsel for Defendant,
Dream On Me Industries, Inc.

Dated: January 31, 2024