UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GO GLOBAL RETAIL, LLC,

                        Plaintiff,

-against-                                                                23-cv-7987 (AS)

DREAM ON ME, INC. et al.,
                                         OPINION AND ORDER
                       Defendants.

ARUN SUBRAMANIAN, United States District Judge.

## BACKGROUND

Plaintiff Go Global Retail is a "brand investment platform" that often buys up "distressed retail assets." Am. Compl. ¶¶ 1–2, Dkt. 29. It uses its in-house research and industry know-how to try to spot profitable opportunities. ¶ 3. When Bed Bath & Beyond went bust, Go Global saw potential bang for its buck. In particular, Go Global "identified and targeted the financially distressed 'buy-buy BABY' ('BBBY') [a Bed Bath & Beyond subsidiary] retail assets for possible purchase out of bankruptcy." ¶¶ 5, 25. But it first needed financing. ¶ 5. It eventually turned to Defendants Dream On Me Industries and Dream On Me, Inc., collectively, "DOM." ¶ 7. The parties talked about bidding on the assets jointly, and they entered a nondisclosure agreement. ¶¶ 7–8. The agreement "expressly forbade DOM from bidding on the assets of BBBY without the participation of Go Global." ¶ 9; *see also* ¶¶ 51–54. After DOM signed the agreement, Go Global gave DOM access to Go Global's "proprietary forecasts, financial models, data, and other Go Global analysis" that dealt with both bidding and post-acquisition strategy. ¶ 10.

But Go Global had to wave bye-bye to BBBY. In the bankruptcy auction days later, DOM bid on and won BBBY's assets independently. ¶¶ 12–13. So Go Global has sued, alleging that DOM cribbed its proprietary information both in purchasing and now using BBBY's assets. ¶¶ 109–113. Specifically, Go Global has sued for breach of contract, attorneys' fees and costs, unjust enrichment, constructive trust, violation of the Defend Trade Secrets Act, and common-law misappropriation. ¶¶ 119–179. DOM has moved to dismiss on two grounds: res judicata and failure to allege damages. Neither has merit, so the motion is DENIED.

## LEGAL STANDARDS

To survive a motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016). Res judicata is an affirmative defense, so it justifies dismissal "only when facts supporting the defense

appear on the face of the complaint" and other materials a court may consider. *In re Nine W. LBO Sec. Litig.*, 87 F.4th 130, 142 (2d Cir. 2023); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992).

## DISCUSSION

### I. Res judicata

"The doctrine of res judicata, or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (cleaned up). "To determine whether the doctrine of res judicata bars a subsequent action, we consider whether 1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same." *Id.* (citation omitted).

When the prior decision comes from a bankruptcy, there are a few nuances. "In the bankruptcy context, … instead of examining whether a subsequent lawsuit asserts claims that could have been included as part of a previous lawsuit, courts have assessed whether a new action seeks to bring claims that could have been raised and litigated within the scope of the bankruptcy proceeding." *Id.* at 158. Courts "ask as well whether an independent judgment in a separate proceeding would impair, destroy, challenge, or invalidate the enforceability or effectiveness of the reorganization plan." *Id.* at 157 (citation omitted). "[T]hough a subsequent lawsuit may not technically ask the district court to disturb a final bankruptcy order, the subsequent action is barred by res judicata when [the plaintiff's] failure to raise these claims (if valid) when they should have, almost certainly affected that prior judgment. This is because had the bankruptcy court found merit in [plaintiff's] challenge to an aspect of the proceedings, the bankruptcy court would have structured a different disposition." *Id.* at 162 (cleaned up).

DOM says that the substance of this suit is both a collateral attack on the sale order and could have been raised before the bankruptcy court. Both arguments are based on largely the same premise: that Go Global's suit is an attack on the "intrinsic fairness" of the bankruptcy proceeding. Dkt. 30-6 at 12; *Brown*, 854 F.3d at 159 (citation omitted). Not so. The "intrinsic fairness" case discussed in *Brown* dealt with collusion among the debtor, creditors, and successful bidder. *Brown*, 854 F.3d at 159. There, the unsuccessful bidder's claim challenged "whether the successful bidder was a 'good faith purchaser,'" which, "if proven, would call into question the 'intrinsic fairness' of the sale hearing." *Id.* (citation omitted).

Here, by contrast, "the complaint is fairly read to allege misconduct only on the part of the defendants. Thus, … it was not incumbent on the plaintiffs to challenge in the bankruptcy court the 'good faith purchaser' status of [DOM] or, more generally, the 'intrinsic fairness' of the bankruptcy sale." *Id.* at 159. Put differently, there is a difference between unfairness intrinsic to the bid and an extrinsic tort or breach committed by the act of bidding. This case is about the latter, so "a judgment against the defendants will have no effect on the continuing validity of the bankruptcy

court's order approving the sale of [BBBY's] assets to [DOM] or the order confirming the [Reorganization] Plan." *Id.* at 162–63; *see also id.* at 163 n.8 (noting that even a claim for expectation damages related to the sold assets isn't a challenge to the sale itself).

DOM also points to two provisions of the sale order that, it says, bar this suit. Neither does so. First, paragraph 16 of the sale order prohibits actions "that would adversely affect or interfere with the ability of the Debtors to sell and/or transfer the Acquired Assets to the Purchaser (or its designee) in accordance with the terms of the APA and this Sale Order." Dkt. 30-4 at 20 ¶ 16. This suit doesn't seek to stop or unwind any sale, so it doesn't "interfere" with the debtors' ability to sell any assets.

Second, paragraph 22 bars "all persons" from "commencing … any action … against any Purchaser Party or their respective assets … with respect to any claim … in connection with or related to the Transaction, the Debtors, or the Acquired Assets." *Id.* at 22 ¶ 22. DOM reads this provision to bar this suit because the suit is "related to" its purchase of BBBY. And it's true that this paragraph does contain broad language. But DOM misinterprets this provision, and its reading would lead to potentially unlawful and absurd results.

DOM misinterprets the provision by failing to consider the meaning of "Transaction," "Debtors," and "Acquired Assets." The "Transaction" is defined in the sale order as "(a) authorizing … and approving, the Asset Purchase Agreement … (b) authorizing and approving the sale of the Acquired Assets … free and clear of all … claims … and (c) granting related relief." *Id.* at 3. "Debtors" and "Acquired Assets" are self-explanatory. *See id.* at 3, 33, 45. Considered together and in context, these limiting terms are clearly geared toward the core bankruptcy concepts of selling the assets free and clear of prior claims and ensuring the finality of the sale order. *Cf.* 11 U.S.C. § 363(f) (free and clear); *Brown*, 854 F.3d at 163 (finality). And though the language reaches cases "in connection with or related to" these limiting terms, that phrase must still be read in context to cover only those actions that take issue with the sale itself. *Cf. De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 813 n.7 (1997) ("[A]pplying the 'relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else." (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N. A., Inc.*, 519 U.S. 316, 335 (Scalia, J., concurring))).

Plus, DOM's reading might be unlawful. It reads the bankruptcy court's order to discharge all claims against any purchaser for all time so long as the claim is tangentially related to the purchase. Yet discharging claims against non-debtors is a hotly contested, live legal issue. *In Re Purdue Pharma L.P.*, 69 F.4th 45, 69–84 (2d Cir.), *cert. granted sub nom. Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 44 (2023). Even if or when it is permitted, it requires substantial due process. *See id.* DOM doesn't address this issue.

And more broadly, DOM's reading is absurd. If someone stole money to purchase bankruptcy assets, DOM's reading would bar a claim against the thief. If a purchaser stopped paying a mortgage on a property bought in foreclosure, even years after the purchase, DOM's reading would bar

3

any claim there too. These scenarios confirm that DOM's reading is untenable. At the very least, the facts to support res judicata don't appear on the face of the complaint and sale order.

## II. Damages

Next, DOM argues that Go Global has failed to plead damages. It says there "is no causal link between DOM's alleged misconduct and any damages" because "it was impossible for [Go Global] to have even been the successful bidder." Dkt. 30-6 at 14. This argument fails. First, it is a factual argument that cannot be resolved on the face of the complaint. It's not implausible that Go Global could have been a successful bidder had DOM not breached. To state the obvious, the parties allegedly had an agreement to bid jointly, and DOM's solo bid won the assets.

Second, it misunderstands Go Global's claims for damages. Go Global seeks the value of its misappropriated trade secrets. That is, the value of the confidential information, analyses, and know-how that Go Global provided to DOM, and which DOM allegedly used. These damages don't have to do with the value of the BBBY assets. Go Global also seeks lost profits and similar relief, but those damages will turn on questions of fact other than whether Go Global could have independently won the BBBY auction. Go Global has plausibly pleaded that DOM acquired and reaped profits from the BBBY assets by breaching the contract and misappropriating Go Global's information. That is enough at this stage. *See St. Christopher's, Inc. v. JMF Acquisitions, LLC*, 2021 WL 6122674, at *4 (2d Cir. Dec. 28, 2021).

## CONCLUSION

For these reasons, the motion is DENIED. The Clerk of Court is directed to close Dkt. 30.

SO ORDERED.

Dated: April 26, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge