UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

GO GLOBAL RETAIL LLC,

                            Plaintiff,

            -against-

DREAM ON ME INDUSTRIES, INC.,
and DREAM ON ME, INC.

                           Defendants.

1:23-cv-07987 (AS)

## DEFENDANTS' RESPONSES TO PLAINTIFF'S 56.1 COUNTERSTATEMENT OF FACTS

66. The prospective Go Global-DOM partnership was presented to Go Global as a pragmatic joining of Go Global's due diligence, modeling, and operational experience with DOM's capital. *See* ECF 66-43 (Streader Aff.) at ¶¶ 28-36; ECF 66-3 (Streader Dep. Tr.) at 61:2-14; ECF 66-11 (Lauster Dep. Tr.) at 36:9-22; ECF 66-5 (Gargiulo Dep. Tr.) at 18:24-19:12; ECF 66-6 (Chau Dep. Tr.) at 34:7-35:5.

**Response:** DOM denies that the prospective Go Global-DOM partnership was presented to Go Global as a pragmatic joining of Go Global's due diligence, modeling, and operational experience with DOM's capital. Up until the June 15, 2023 meeting, DOM had been under the impression that Go Global would be investing their own capital along with DOM since the Go Global Model clearly reflected that Go Global would be contributing $15 million in capital. *See* Declaration of Thomas K. Murphy III ("Murphy Decl.")[1], Exhibit N (Go Global's 95-store model);

---

[1] Exhibits A through AQ are attached to the Declaration of Counsel filed with DOM's motion for summary judgment on December 20, 2024. *See ECF 61*. Exhibits AR through AZ are filed with the Declaration of Counsel filed with this Reply Brief on January 16, 2025.

Exhibit C (Dahiya Dep. Tr.) at 87:24-88:8. DOM was only interested in investing if they were a general partner involved in the day-to-day operation. *Id.*, Exhibit D (Srour Dep. Tr.) at 36:10 – 38:11; Exhibit C (Dahiya Dep. Tr.) at 128:23 – 131:3; Exhibit H (Streader Dep. Tr.) at 28:12-29:5.

67. DOM communicated to Go Global that it was interested in joining Go Global as a limited partner investor. *See* ECF 66-3 (Streader Dep. Tr.) at 61:2-14; ECF 66-6 (Chau Dep. Tr.) at 26:8-13, 29:4-20.

**Response:** DOM denies that DOM communicated to Go Global that it was interested in joining Go Global as a limited partner investor. Up until the June 15, 2023 meeting, DOM had been under the impression that Go Global would be investing their own capital along with DOM since the Go Global Model clearly reflected that Go Global would be contributing $15 million in capital. *See* Murphy Decl., Exhibit N (Go Global's 95-store model); Exhibit C (Dahiya Dep. Tr.) at 87:24-88:8. DOM was only interested in investing if they were a general partner involved in the day-to-day operation. *Id.*, Exhibit D (Srour Dep. Tr.) at 36:10 – 38:11; Exhibit C (Dahiya Dep. Tr.) at 128:23 – 131:3; Exhibit H (Streader Dep. Tr.) at 28:12-29:5.

68. Avish Dahiya, who signed Go Global's non-disclosure agreement ("NDA") on behalf of DOM, understood that the purpose of the NDA was to enable Go Global to safely share its Proprietary Information with DOM for the purposes of discussing a potential joint partnership. *See* ECF 66-8 (Dahiya Dep. Tr.) at 62:19-24, 65:3-17, 66:20-67:7; ECF 66-20 (NDA) at ¶ 1.

**Response:** DOM denies that Go Global's information was proprietary. *See* Murphy Decl., Ex. AZ (Hanover Report) at 21. DOM admits the remaining allegations in this contention.

69. The NDA defines "Proprietary Information" as "information concerning [BBBY] . . . information concerning [Go Global] . . . and all information derived therefrom including without limitation, trade secrets (under state law and the Defend Trade Secrets Act), know-how, summaries,

2

notes, processes, ideas, contracts, other technical, business, financial, customer, and product development plans, forecasts, strategies, customer lists and data, financial information, employee information, pricing data, sales data, intellectual property of any nature, marketing plans, website designs, internet marketing or sales practices or strategies, and records containing or otherwise reflecting such information." *See* ECF 66-20 (NDA) at ¶ 9.

**Response:** DOM admits this is a quote from the NDA.

70. The NDA requires DOM to "hold in confidence and not disclose, reproduce, distribute, transmit, reverse engineer, decompile, disassemble, or transfer, directly or indirectly, in any form, by any means, or for any purpose, the Proprietary Information or any portion thereof." *Id.* at ¶ 3.

**Response:** DOM admits this is a quote from the NDA.

71. After DOM executed the NDA, DOM and Go Global held a meeting on June 15, 2023 (June 15 Meeting). *See* ECF 66-3 (Streader Dep. Tr.) at 40:22-41:14; ECF 66-5 (Gargiulo Dep. Tr.) at 17:11-15; ECF 66-11 (Lauster Dep. Tr.) at 39:8-17; ECF 66-7 (Srour Dep. Tr.) at 83:17-19. Unbeknownst to Go Global, DOM was secretly recording and surreptitiously reviewing the June 15 Meeting audio-video footage in real time. *See* ECF 66-7 (Srour Dep. Tr.) at 94:9-96:22; ECF 66-8 (Dahiya Dep. Tr.) at 124:16-126:2. Thereafter, DOM also referenced the recorded June 15 Meeting in attempt to circumvent Go Global in the Bankruptcy Auction. *See* ECF 66-23 (June 15 Meeting Tr.) at 93:14-18.

**Response:** DOM admits that on June 15, 2023, Go Global representatives Feuer and Gargiulo, and Ankura representatives Lauster and Lapish, met with DOM representatives M. Srour, J. Srour, Dahiya, and Gandhi at DOM's New Jersey offices to continue discuss Baby (the "June 15 Meeting"). DOM admits that the conference room where the June 15 meeting takes place

has a surveillance system that records all activity inside the conference room. DOM denies that the citation supports the contention that DOM attempted to circumvent Go Global in the Bankruptcy Auction. *See* ECF 66-23 (June 15 Meeting Tr.) at 93:14-18 states ("[F]rom a pricing perspective, I think what we discussed makes sense . . . making an offer of something, like ▮ or ▬▬▬ or something around that") which does not support the contention that DOM referenced the recording.

72. On June 14, 2023, DOM disclosed Go Global's Financial Model to non-DOM employees. *See* ECF 66-25 at DOM0002969; ECF 66-7 (Srour Dep. Tr.) at 53:8-55:22, 54:5-8, 61:10-18, 63:16-64:9, 65:11-17, 72:6-24, 197:6-11; ECF 66-26 at DOM0002995; ECF 66-8 (Dahiya Dep. Tr.) at 118:21-23.

**Response:** Admitted. June 14, 2023 was prior to the meeting on June 15, 2023, at a time when DOM was still considering a partnership with Go Global. *See* Murphy Decl., Exhibit C (Dahiya Dep. Tr.) at 93:10-94:14, 127:22-134:10; Exhibit D (Srour Dep. Tr.) at 102:15-25.

73. Go Global ultimately provided DOM access to Go Global's Proprietary Information because Go Global relied on DOM's representations, oral and in writing, that DOM would limit its use of Go Global's Proprietary Information to the development of a potential joint bid with Go Global, hold Go Global's Proprietary Information in confidence, and would not pursue an independent bid for Baby's Bankruptcy Assets without Go Global. *See* Peltz Decl., Exhibit 18 (NDA) at ¶¶ 2-3, 12; *see also* Exhibit 1 (Streader Dep. Tr.) at 35:12-22; Exhibit 2 (Feuer Dep. Tr.) at 54:17-23, 55:12-19.

**Response:** DOM denies that DOM represented that it would not pursue an independent bid for Baby's Bankruptcy Assets without Go Global. *See* Murphy Decl., Exhibit D (Srour Dep. Tr.) at 104:12-105:8; Exhibit C (Dahiya Dep. Tr.) at 134:7-135:9. DOM denies that that this

4

information was proprietary. *See* Murphy Decl., Ex. AZ (Hanover Report) at 21. DOM refers to the NDA for its terms. *See* Murphy Decl., Exhibit L (NDA).

74. DOM used Go Global's Proprietary Information in DOM's solo bid for the Baby Bankruptcy Assets. *See* ECF 66-28 at DOM0010953; ECF 66-29 at DOM0018444; ECF 66-30 at DOM0018452; *see also* ECF 66-6 (Chau Dep. Tr.) at 43:14-44:9.

**Response:** DOM denies that the citation supports the contention that DOM used Go Global's Proprietary Information as a benchmark to assist with and accelerate DOM's due diligence and development of work product in relation to structuring a bid for the Baby Bankruptcy Assets. *See* ECF 66-28 at DOM0010953; ECF 66-29 at DOM0018444; ECF 66-30 at DOM0018452; *see also* Murphy Dec., Exhibit AT (Chau Dep. Tr.) at 43:14-44:9. DOM further denies that that this information was proprietary. *See* Murphy Decl., Ex. AZ (Hanover Report) at 21.

75. DOM was always going to submit a bid for the Baby Bankruptcy Assets, with or without Go Global. *See* ECF 66-7 (Srour Dep. Tr.) at 39:25-40:8, 104:12-18, 105:5-8; ECF 66-8 (Dahiya Dep. Tr.) at 135:6-9.

**Response:** Admitted.

76. After Go Global made the decision to withdraw from the auction process, Jeffrey Streader received encouragement from Lazard to remain in the auction and Go Global reversed the decision to withdraw. *See* ECF 66-35 at GG-0034330; ECF 66-5 (Gargiulo Dep. Tr.) at 54:19-55:10; ECF 66-28 at DOM0010953.

**Response:** Admitted.

77. Ziff Davis and Go Global then had discussions regarding partnering to obtain Baby's going concern. *See* ECF 61-1 at ¶ 43.

5

**Response:** Admitted. Ziff Davis and Go Global had discussions regarding partnering to obtain Baby's going concern only after DOM won the Baby IP Auction.

78. Ziff Davis is not an "operator" of retail stores and thus required an entity with retail experience, like Go Global, to execute brick and mortar store operations. *See*; ECF 66-3 (Streader Dep.) at 98:15-99:1.

**Response:** DOM admits that it is Go Global's Contention. DOM does not have knowledge or information to rely upon to provide a basis to deny this contention. However, the potential partnership between Ziff Davis and Go Global appeared to fall apart because Ziff Davis did not want a "lead" and Go Global did not want Ziff Davis as "lead." *See* Murphy Decl., Exhibit X (Emails between Axar and Go Global). Additionally, Ziff did not want to invest in brick and mortar retail which Ziff Davis viewed as a "fundamental issue." *Id.* Ex. AY (Emails between Ziff Davis and Go Global).

79. The Baby IP Auction occurred on June 28, 2023. *See* ECF 66-37.

**Response:** Admitted.

80. DOM attended the Baby IP Auction at the New York offices of the law firm Kirkland & Ellis LLP. *See* ECF 66-8 (Dahiya Dep. Tr.) at 178:19-21; ECF 66-13 (June 29 Bankruptcy Order) at DOM0004314.

**Response:** Admitted.

81. The Baby IP Auction lasted for approximately three or four hours and saw multiple rounds of bidding. *See* ECF 66-9 (Gandhi Dep. Tr.) at 111:4-112:15.

**Response:** Admitted.

82. DOM increased the maximum bid it would place as the Baby IP Auction proceeded. *See* ECF 66-37.

**Response:** Admitted.

83. During the Baby IP Auction, DOM authorized a maximum bid of $10.2 million. ECF 66-37 at DOM0013036.

**Response:** Denied to the extent that it implies that DOM ever set a maximum bidding amount. DOM admits that Mr. Srour did not have a set bidding ceiling. DOM denies the citation supports the contention that Srour had "no" ceiling for how much he would bid to win the assets. *See* Murphy Decl., Exhibit D (Srour Dep. Tr.) at 202:5-21.

84. DOM subsequently exceeded this threshold, at one point placing a bid for $11 million, while also authorizing a new maximum bid of $20 million. *Id*.

**Response:** DOM admits that it placed a bid for $11 million, while also authorizing a new maximum bid of $20 million. ECF 66-37 at DOM0013036.

85. DOM ultimately paid $15.5 million for the Baby IP, and Srour was willing to pay more. *See* ECF 66-5 (Gargiulo Dep. Tr.) at 48:14-49:24; ECF 66-7 (Srour Dep. Tr.) at 202:5-21.

**Response:** Admitted.

86. At the same time, the value of the Baby IP and Going Concern was consistently falling with each passing day because Baby was sustaining brand damage and selling out its inventory. *See* ECF 66-5 (Gargiulo Dep. Tr.) at 36:22-37:20, 42:12-43:16, 68:15-21; ECF 66-6 (Chau Dep. Tr.) at 103:6-105:3; ECF 66-8 (Dahiya Dep. Tr.) at 83:2-19.

**Response:** DOM admits this is Go Global's Contention. DOM does not have knowledge or information to rely upon to provide a basis to deny this contention.

87. DOM knew details about Go Global's anticipated bid, the amount it would pay for each of the intellectual property and going concern, Go Global's projected costs to run the same,

7

investment structure, and profits upon exit. *See* ECF 66-7 (Srour Dep. Tr.) at 202:22-203:2; ECF 66-8 (Dahiya Dep. Tr.) at 97:12-15, 107:21-108:11; ECF 66-25 at DOM0002969.

**Response:** Denied. DOM only had knowledge of Go Global's bidding strategy of June 15, 2023, and DOM did not have knowledge of Go Global's bidding strategy at the time of the auction or after the Overstock.com purchase of BB&B. *See* Murphy Decl., Exhibit AS (Feuer Dep. Tr.) at 77:9-14; 84:6-19; 85:5-7; Ex. M, Activity Log. *See* Murphy Decl., Ex. AZ (Hanover Report) at 26.

88. DOM knew that the Bankruptcy Auction for the Baby IP and the Baby Going Concern would occur on separate days, with the Baby IP auction occurring first. *See* ECF 66-7 (Srour Dep. Tr.) at 200:24-201:10.

**Response:** Admitted.

89. DOM also knew that Go Global was interested in purchasing Baby's entire business operation as a whole. *See* ECF 66-3 (Streader Dep. Tr.) at 28:9-15; ECF 66-8 (Dahiya Dep. Tr.) at 45:3-13.

**Response:** Admitted.

90. DOM had access to Go Global's Bidding Strategy, and the narration and thinking of the Go Global executives who were forming that strategy in real time. *See* ECF 66-7 (Srour Dep. Tr.) at 202:22-203:2; ECF 66-8 (Dahiya Dep. Tr.) at 107:9-108:11; ECF 66-16 at DOM0002943-44.

**Response:** DOM denies that it had access to Go Global's Bidding Strategy, and the narration and thinking of the Go Global executives who were forming that strategy in real time.

DOM admits that Go Global informed DOM of a proposed bid for the 95-store model between June 10 and June 15, 2023. *See* Murphy Decl., Exhibit N (Go Global's 95-store model).

91.     DOM viewed Go Global as the potential bidder with the highest chance of winning the Baby Bankruptcy Auction. ECF 66-23 (June 15 Meeting Tr.) at 204:13-17; *see also* ECF 66-10 (Malhotra Dep. Tr.) at 188:5-18; ECF 66-11 (Lauster Dep. Tr.) at 56:24-57:12.

**Response:** Admitted.

92.     On June 23, 2023, Avish Dahiya admitted the following regarding DOM: "Every other bidder has done more extensive work." Further Dahiya questioned, "Can [DOM] even do this? If we cannot give them what they need, we look highly unprofessional not knowing what we are doing." *See* Defendants' Ex. AL, DOM Email.

**Response:** Admitted.

93.     Despite DOM's $15.5 million successful bid for Baby's IP on June 28, 2023, Go Global still had an opportunity to purchase the entire Baby business, including Baby's IP as a going concern. *See* ECF 66-13 (June 29 Bankruptcy Notice) at DOM004313-14; ECF 66-38 at GG-0048828; ECF 66-3 (Streader Dep. Tr.) at 70:21-24, 78:6-9, 97:24-98:3; ECF 66-5 (Gargiulo Dep. Tr.) at 49:13-50:4, 51:9-22.

**Response:** Admitted.

94.     At the same time, the value of the Baby IP and Going Concern was consistently falling with each passing day because Baby was sustaining brand damage and selling out its inventory. *See* Peltz Decl., ECF 66-5 (Gargiulo Dep. Tr.) at 36:22-37:20, 42:12-43:16, 68:15-21; ECF 66-6 (Chau Dep. Tr.) at 103:6-105:3; ECF 66-8 (Dahiya Dep. Tr.) at 83:2-19.

**Response:** DOM admits this is Go Global's Contention. DOM does not have knowledge or information to rely upon to provide a basis to deny this contention.

95. Ultimately, due to DOM's overvalued $15.5 million bid for the Baby IP, Go Global was not able to justify paying the inflated price for Baby's distressed assets as a going concern. *See* ECF 66-3 (Streader Dep. Tr.) at 68:15-69:10; 71:3-18, 97:24-98:14; ECF 66-4 (Feuer Dep. Tr.) at 76:2-23; ECF 66-5 (Gargiulo Dep. Tr.) at 46:12-14, 50:25-51:4, 59:6-10; ECF 66-6 (Chau Dep. Tr.) at 103:6-105:3.

**Response:** DOM denies that Go Global was not able to justify paying the inflated price for Baby's distressed assets as a going concern due to DOM's overvalued $15.5 million bid for the Baby IP.  Prior to DOM's $15.5 million bid, Go Global failed to submit a qualifying bid and Go Global failed to secure the necessary funding to complete the transaction.  *See* Murphy Decl., Ex. O, E-mail Exchange Between Go Global and Ankura; Ex. AZ (Hanover Report) at 24-25.


**GREENBAUM, ROWE, SMITH & DAVIS LLP**

Attorneys for Defendants,
Dream On Me Industries, Inc. and
Dream on Me, Inc.


By: ____*s/ Thomas K. Murphy III*____

      Thomas K. Murphy III, Esq.

Dated: January 16, 2025